### IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS & CONDUCT, Complainant,

v.

### James SCHEETZ, Respondent.

### No. 96–333.

Supreme Court of Iowa.

June 19, 1996.

Norman G. Bastemeyer and David J. Grace, Des Moines, for complainant.

Timothy Lynch of Van Orsdel, Lynch & Rouse, L.C., Des Moines, and James Scheetz, Des Moines, pro se, for respondent.

Considered by McGIVERIN, C.J., and LAVORATO, SNELL, ANDREASEN, and TERNUS, JJ.

LAVORATO, Justice.

In this attorney disciplinary proceeding, the Iowa Supreme Court Grievance Commission recommended that James Scott Scheetz be reprimanded for his failure to handle in a timely manner three probate matters he accepted. We agree and publicly reprimand Scheetz for his neglect of legal matters entrusted to his care.

### I. Background Facts and Proceedings.

Scheetz graduated from law school and became licensed to practice law in Iowa in 1990. He was an associate in a private practice firm, where he remained for about two years.

In 1992 Scheetz terminated his employment because he thought his pay was too low. In an attempt to establish a solo practice, Scheetz opened his office in a building housing other independent practitioners. One receptionist answered calls for all attorneys in the building.

Scheetz did not hire any clerical staff. He performed most secretarial and bookkeeping duties himself in an attempt to minimize his overhead expenses. Ninety percent of his practice was devoted to criminal defense work and court appointments. The remaining ten percent was general practice work. During this time frame Scheetz also taught an evidence course at the local community college. The facts underpinning this proceeding arose out of Scheetz' desire to expand his practice base by accepting probate work.

A. *The Ricketts wills.* James R. Ricketts, an Oregon resident, asked Scheetz to begin estate proceedings on two wills. Scheetz accepted the work but failed to probate either will. Ricketts was unable to get the wills back from Scheetz.

Ricketts complained to the Iowa Supreme Court Board of Professional Ethics and Conduct. On November 17, 1993, the board sent Scheetz a notice of complaint by restricted, certified mail regarding the Ricketts matter. The board requested a response from Scheetz. Scheetz received the notice on November 19. He failed to respond.

The board sent a second notice and request to Scheetz on the Ricketts complaint on January 10, 1994. Scheetz signed for this notice on January 12. Again, he did not respond.

Ricketts contacted the grievance commission clerk on February 17. Ricketts asked the clerk for his assistance in getting Scheetz to return the wills. The clerk called Scheetz and left a message for him to return the clerk's call. Scheetz did not do so. On February 22 the board notified Scheetz that it was going to file a complaint against him with the commission for his failure to respond to the board's notices and for his conduct in handling the Ricketts matters.

The clerk again called Scheetz on April 5 after Ricketts contacted the clerk a second time on April 4. Scheetz agreed to return the wills to Ricketts, along with the $100 retainer he had received. Scheetz told the clerk that he would be sending the documents back to Ricketts by the end of the week. The clerk told Ricketts that if he did not receive the wills by the end of the following week, he should give the clerk a call.

On April 18 Ricketts called the clerk a third time because Scheetz had not returned the wills as promised. The clerk called Scheetz on April 20 and left a message for him to return his call. Scheetz did not respond to this call nor the clerk's April 27 follow-up call.

On May 4 the clerk sent a client security auditor to Scheetz' office on a "routine" compliance audit. The same day Scheetz sent the clerk a letter. In the letter Scheetz informed the clerk that he (1) had delivered the wills to Ricketts and (2) was leaving private practice. Scheetz had accepted a position as an assistant county attorney assigned to area drug prosecutions.

During the pendency of the Ricketts matter, the clerk was not aware of the board's ongoing investigation of Scheetz' aborted attempt to probate the two Ricketts wills or the fact that the board filed a complaint against Scheetz with the commission.

B. *The Bordenaro estate.* Early in 1994 Lucretia Bordenaro's executor—who was also her son—asked Scheetz to finalize administration of Ms. Bordenaro's estate. Ms. Bordenaro had died in 1989. Her will had been admitted to probate and an inventory had been filed. The executor had discharged two prior attorneys before retaining Scheetz to finalize administration of the estate. Filing the final report was essentially all that remained to be done before the estate could be closed.

Scheetz accepted the work and assured the executor that he would finalize the probate proceedings. He entered his appearance on behalf of the estate on April 6, 1994.

The Polk county clerk of court issued a delinquency notice to Scheetz on May 1 for his failure to file the Bordenaro estate final report. *See* Iowa Code § 633.32 (1993); Iowa R. Probate P. 5. As noted above, Scheetz closed his private practice later that month and began working for the State.

On July 21 the clerk reported the Bordenaro delinquency to the board. On August 17 the board sent Scheetz a notice of complaint and request for response by restricted, certified mail. Scheetz received the notice on August 27. He did not respond.

On September 21 the board sent Scheetz a second notice of complaint by restricted, certified mail at his last known address. This mailing was returned to the board with the notation "unclaimed." The clerk issued a second delinquency notice on November 1 for failure to file an interlocutory report. Scheetz did not respond. At the end of sixty days, the clerk reported this delinquency to the board.

On February 22, 1995, the board sent a notice of complaint and request to Scheetz by restricted, certified mail concerning the latest delinquency in the Bordenaro estate. He signed for these documents on February 25 but made no further response. The board sent a second notice of complaint on March 20. This mailing was returned to the board, with the notation "unclaimed." Scheetz at this point had filed nothing in the Bordenaro estate beyond his April 6, 1994, appearance. The Bordenaro estate was closed only after the executor made the necessary filings on his own.

The board filed a formal complaint against Scheetz with the commission on October 6, 1995. Count I alleged ethical violations stemming from Sheetz' neglect of the Ricketts matter. Count II alleged ethical violations stemming from Scheetz' neglect of the Bordenaro matter.

Scheetz answered and responded affirmatively to the board's request for admissions. The five-member commission unanimously recommended that Scheetz be publicly reprimanded. Scheetz did not appeal to us from the commission's recommendation. *See* Iowa Sup.Ct.R. 118.11.

## II. *Scope of Review.*

We automatically review de novo attorney disciplinary recommendations. *See* Iowa Sup.Ct.R. 118.10. We ultimately determine whether discipline is warranted and what sanction, if appropriate, to impose. *Id.*

The board must prove its allegations of misconduct by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Conzett,* 476 N.W.2d 43, 44 (Iowa 1991) (citation omitted). Certain well-recognized standards guide our determination whether discipline is warranted: "the nature of the alleged violations, the need for deterrence, protection of the public, maintenance of the reputation of the bar as a whole, and the respondent's fitness to continue in the practice of law." *Committee on Professional Ethics & Conduct v. Blomker,* 379 N.W.2d 19, 21 (Iowa 1985) (citation omitted).

## III. *The Board's Allegations.*

In the Ricketts matter, the board alleged Scheetz had violated the following disciplinary rules: DR 1–102(A)(1) (lawyer shall not violate a disciplinary rule); DR 1–102(A)(5) (lawyer shall not engage in conduct that is prejudicial to the administration of justice); and DR 6–101(A)(3) (lawyer shall not neglect a client's legal matter).

In the Bordenaro matter, the board alleged Scheetz had violated the same disciplinary rules as alleged in the Ricketts matter, plus DR 6–101(A)(1) (lawyer shall not handle a legal matter which the lawyer knows or should know the lawyer is not competent to handle).

## IV. *The Commission's Findings.*

The commission made several findings, all of which we adopt. The commission acknowledged the following factors—which it considered to be nonmitigating—in making its findings. At the time Scheetz was attempting to build a solo law practice, he was also experiencing "a prolonged period of difficulty in his personal life." This included adjusting to married life, raising children, financial strain, and the demands of a hectic non-legal business that he owned. His shortcoming in his private practice was his failure to seek help when confronted with tasks he did not know how to handle. Not knowing what to do next, he felt overwhelmed and "froze." So files in unfamiliar work—like probate—went to the bottom of the pile while he concentrated on familiar work like criminal defense.

Scheetz, who was represented by counsel, testified at the disciplinary hearing. To his credit, he readily admitted his lack of competence in probate matters. He urged the commission to recommend that his license to practice law be limited to practice outside the probate area unless he first aligned himself with a practitioner accomplished in probate matters.

The commission found Scheetz was successful in his present position, was confident of his ability to handle the work, and appreciated the structure it provides. The commission also acknowledged that Scheetz had been reprimanded by this court on September 15, 1994, for neglect of legal matters not at issue here, but of a similar nature. But the commission did not view this reprimand as an aggravating factor, because it arose in the same general period as the Ricketts and Bordenaro matters and in fact was pending when the Ricketts and Bordenaro problems developed.

In the Ricketts matter the commission found that Scheetz had violated DR 1–102(A)(1), DR 1–102(A)(5), and DR 6–101(A)(3). In the Bordenaro matter, the commission found that Scheetz again violated

these disciplinary rules, in addition to DR 6–101(A)(1). In considering the appropriate sanction to recommend, the commission seriously considered Scheetz' failure to respond to board notices and requests for reply. After considering the record as a whole, the commission attributed Scheetz' failure to respond more to a breakdown of his meager office practices than to a willful refusal to cooperate. The commission did not consider Scheetz a danger to the public. Ultimately, the commission recommended a public reprimand for the conduct complained of here.

### V. *Discipline.*

■ We determine what discipline is appropriate based upon the facts of each case. *Committee on Professional Ethics & Conduct v. Shifley,* 390 N.W.2d 133, 135 (Iowa 1986) (en banc) (citation omitted). We conclude some form of discipline is warranted on the facts presented. *See, e.g., Committee on Professional Ethics & Conduct v. Winkel,* 415 N.W.2d 601, 602 (Iowa 1987) ("[A] lawyer's dilatoriness in the handling of a probate matter will be met by disciplinary sanction."). More problematic is the appropriate sanction. Although the commission unanimously recommended a public reprimand, the record presents an extremely close question on this issue.

On the one hand—and as the commission found—Scheetz has voluntarily taken remedial measures. By leaving private practice, he deprived himself of all opportunities to accept further probate work. Scheetz affirmatively responded to the board's request for admissions, and testified forthrightly at the hearing. The county attorney for whom he works the most testified that he is an excellent employee. By all accounts he is working hard and doing well as a public servant. Scheetz readily admits he is not proficient in probate matters. He concedes he could benefit from counseling. He understands the seriousness of his failure to respond to his clients. We agree with the commission's finding that Scheetz is not a danger to the public.

On the other hand, Scheetz received one uncontested public reprimand for neglect of another probate matter. In the present proceeding he failed to respond to the board's multiple notices of complaint and requests for response. Although it appears neither client was irreparably harmed by Scheetz' conduct, at the very least each suffered vexatious and clearly unreasonable delays in resolving the legal matters entrusted to Scheetz for prompt resolution.

Neglect of probate matters and failure to cooperate with the board's investigation has in some of our cases led to suspension of an attorney's license for an indefinite period of time. *See, e.g., Iowa Supreme Ct. Bd. of Professional Ethics & Conduct v. Winkel,* 542 N.W.2d 252, 253 (Iowa 1996) (six-month suspension for neglect of fifteen different probate matters generating seventy-one delinquency notices and for failure to cooperate in board's investigation); *Committee on Professional Ethics & Conduct v. Humphrey,* 529 N.W.2d 255, 259 (Iowa 1995) (sixty-day suspension for neglect of three probate matters and a postconviction relief matter and for failing to respond to state and federal court and committee inquiries).

In other cases, such conduct has led to a public reprimand. *See, e.g., Iowa Supreme Ct. Bd. of Professional Ethics & Conduct v. Sather,* 534 N.W.2d 428, 430–31 (Iowa 1995) (public reprimand for neglect of family probate matter and failure to respond to board inquiries); *Committee on Professional Ethics & Conduct v. Morris,* 505 N.W.2d 194, 195–96 (Iowa 1993) (public reprimand for neglect and mismanagement of probate trust and for failure to maintain adequate trust accounting records); *Committee on Professional Ethics & Conduct v. Pracht,* 505 N.W.2d 196, 199–200 (Iowa 1993) (public reprimand for neglect of three probate matters and for failure to fully cooperate with the committee's investigation); *Committee on Professional Ethics & Conduct v. Larsen,* 407 N.W.2d 601, 602 (Iowa 1987) (public reprimand for neglect of one probate matter, neglect of one conservatorship matter, and for failure to cooperate with the committee's investigation, which the commission viewed as "isolated events inconsistent with respondent's normal method of conducting his law practice").

Given Scheetz' voluntary remedial actions limiting his practice to areas of competence and his demonstrated ability to practice law in a more structured setting, we conclude the most appropriate sanction to impose on these facts is a public reprimand. Should Scheetz ever return to private practice, we (1) prohibit him from accepting any probate or estate matters without first aligning himself with a mentor experienced in this area, and (2) require him to adopt, use and maintain law office management practices that will aid him in performing future work in a timely manner.

Costs are assessed to Scheetz pursuant to Iowa Supreme Court rule 118.22.

**ATTORNEY REPRIMANDED.**