# IN THE SUPREME COURT OF IOWA

No. 09–1200

Filed July 16, 2010

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

   Appellee,

vs.

**LARRY J. COHRT,**

   Appellant.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports that respondent committed ethical misconduct and recommends a suspension. **LICENSE SUSPENDED.**

Larry J. Cohrt, Waterloo, pro se.

Charles L. Harrington and Wendell J. Harms, Des Moines, for appellee.

**CADY, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged Larry J. Cohrt with numerous violations of the Iowa Code of Professional Responsibility for Lawyers mainly stemming from his neglect of client matters in two cases. The Grievance Commission of the Supreme Court of Iowa found Cohrt violated the code of professional responsibility. It recommended Cohrt be suspended from the practice of law for a period of sixty-one days. On our review, we find Cohrt violated the code of professional responsibility and impose an indefinite suspension of not less than three months.

## I. Background Facts.

Larry J. Cohrt is an Iowa lawyer. He was admitted to practice law in Iowa in 1969, after graduating from law school with distinction. He has practiced law in Waterloo throughout his career and is currently a sole practitioner. He received a private admonition in 1996 for neglecting a client matter.

The board initiated a disciplinary action against Cohrt based on his conduct in representing clients in two separate cases. In the first case, Cohrt represented a waste disposal business called Black Hawk Waste Disposal Company, Inc. (Black Hawk) involving a claim against a business competitor known as Waste Management, Inc. In the second case, Cohrt represented Travis Schleusner and his father, Ronald Schleusner, in a claim against the sellers of a lake cabin they had purchased and a pest control business called A-1 Pest Control.

In the first matter, Cohrt prepared and filed a lawsuit in August 2003 on behalf of Black Hawk against Waste Management, Inc., alleging claims of tortious interference and defamation. He also sought and obtained a temporary injunction from the district court. The order

enjoined Waste Management, Inc. and its affiliates from interfering with business relationships between Black Hawk and its customers. The issuance of the injunction was conditioned upon the filing of a surety bond by Black Hawk.

Black Hawk obtained the necessary bond from a surety company and delivered it to Cohrt for filing. Cohrt, however, never filed the bond with the court. Subsequently, Cohrt repeatedly failed to respond to interrogatories and requests for production of documents sought by counsel for Waste Management, Inc. within the deadlines established by the rules of civil procedure, as well as a later deadline established by the district court in response to a motion to compel. In response to the motion to compel, Cohrt asserted he had been unable to complete the discovery responses due to his trial schedule and workload. After Cohrt failed to provide discovery within the court-imposed deadline, the district court scheduled a hearing for the imposition of sanctions. Just hours before the scheduled hearing on sanctions, Cohrt filed a dismissal of the lawsuit without prejudice. This dismissal occurred ten days prior to the scheduled trial date. The dismissal was not signed by a company representative of Black Hawk.

In the second matter, Cohrt prepared and filed a lawsuit on behalf of the Schleusners in September 2003 after they discovered the home they had purchased the previous summer was infested with termites. The lawsuit claimed the pest control company was negligent in its presale inspection of the home. As in the other matter, Cohrt failed to timely respond to interrogatories and other discovery requests propounded by defense counsel. Defense counsel then moved to compel discovery after informal attempts to obtain responses failed. In response to the motion to compel, Cohrt asserted in a resistance filed with the

court that he had been unable to provide the discovery due to his trial schedule. The district court sustained the motion and ordered Cohrt to respond to the interrogatories within thirty days. After Cohrt failed to provide discovery within the court-imposed deadline, defense counsel moved for the imposition of sanctions. Cohrt provided the requested responses to the interrogatories prior to the hearing on sanctions. Nevertheless, the court ordered Cohrt (or the plaintiffs) to pay attorney fees of $200 to the pest control company by April 30, 2004, and directed the case be dismissed against the pest control company in the event the fees were not timely paid. The fees were not paid as ordered, and the court dismissed the case against the pest control company on May 7, 2004.

In both cases, the plaintiffs claimed they were unaware of the ongoing discovery debacles in their lawsuits. Black Hawk asserted Cohrt never advised company representatives that he decided to dismiss the lawsuit. It also claimed it never authorized Cohrt to dismiss the lawsuit. Travis and Ronald Schleusner claimed they had no knowledge of the $200 attorney-fee award or that their lawsuit was in jeopardy of being dismissed.

Cohrt asserted he dismissed the Black Hawk lawsuit for two reasons. He learned, as he had suspected for some time, that he had named the wrong corporate entity as the defendant. He claimed he discussed the problem with Black Hawk company representatives and advised them of the dismissal prior to filing it with the court. He declined to file the surety bond until he was able to determine the proper defendant. He also felt the case should be dismissed because Black Hawk had failed to provide him with the needed information to allow him

to properly respond to the discovery requests. He feared the court would order the case dismissed if the sanction hearing took place.

Cohrt claimed he purposely allowed the Schleusners' lawsuit to be dismissed against the pest control company because he determined the two-page written inspection report at the center of the lawsuit contained a clause that limited the scope of the inspection only to areas of the house accessible to visual inspection and included a declaration that the report was not a warranty against latent infestation. Because the Schleusners claimed the sellers had taken steps to purposely hide termite damage to the house at the time of the inspection and sale, Cohrt felt the clause in the report provided the pest control company with a complete defense, rendering a lawsuit against the company frivolous.

Consequently, Cohrt claimed his actions in both cases were consistent with the ethical obligation of lawyers. In the Black Hawk case, Cohrt asserted he was obligated to dismiss the lawsuit once he learned he had sued the wrong defendant. In the Schleusner case, Cohrt maintained he was ethically obligated not to pursue the lawsuit against the pest control company once he determined it was frivolous.

**II.  Board Complaint and Commission Decision.**

The board ultimately charged Cohrt with multiple violations of the code of professional responsibility. The violations essentially pertained to neglect and inaction, failure to communicate, misrepresentation, and failure to withdraw from employment. In the Black Hawk proceeding, the violations alleged by the board included DR 1–102(A)(1) (conduct that violates a disciplinary rule), DR 1–102(A)(4) (conduct involving misrepresentation), DR 1–102(A)(5) (conduct prejudicial to the administration of justice), DR 1–102(A)(6) (conduct that adversely reflects on the fitness to practice law), DR 2–110(A)(1) (withdrawal from

employment without tribunal's permission), DR 2–110(A)(2) (withdrawal from employment causing prejudice to the client's rights), DR 2–110(B)(1) (withdrawal from employment required if lawyer discovers lawsuit is being brought for the purpose of harassing or maliciously injuring someone), DR 2–110(B)(2) (withdrawal from employment required when continued employment will result in violation of disciplinary rule), DR 2–110(B)(3) (withdrawal from employment required when lawyer's mental or physical condition renders lawyer unable to carry out employment), DR 2–110(B)(4) (withdrawal from employment required when lawyer is discharged by client), DR 6–101(A)(2) (lawyer shall not handle a legal matter without adequate preparation), DR 6–101(A)(3) (lawyer shall not neglect a client matter), DR 7–101(A)(1) (lawyer shall seek lawful objectives of client), DR 7–101(A)(2) (lawyer shall not intentionally fail to carry out contract of employment), DR 7–101(A)(3) (lawyer shall not intentionally prejudice or damage client), DR 7–102(A)(3) (lawyer shall not conceal or knowingly fail to disclose information to client), DR 7–102(A)(8) (lawyer shall not knowingly engage in illegal conduct in the representation of a client), and DR 7–106(A) (lawyer shall not disregard court rule).

In the Schleusner proceeding, the violations alleged by the board included DR 1–102(A)(1) (conduct that violates a disciplinary rule), DR 1–102(A)(4) (conduct involving misrepresentation), DR 1–102(A)(5) (conduct prejudicial to the administration of justice), DR 1–102(A)(6) (conduct that adversely reflects on the fitness to practice law), DR 2–110(A)(1) (withdrawal from employment without tribunal's permission), DR 2–110(A)(2) (withdrawal from employment causing prejudice to the client's rights), DR 2–110(B)(1) (withdrawal from employment required if lawyer discovers lawsuit is being brought for the purpose of harassing or

maliciously injuring someone), DR 2–110(B)(2) (withdrawal from employment required when continued employment will result in violation of disciplinary rule), DR 2–110(B)(3) (withdrawal from employment required when lawyer's mental or physical condition renders lawyer unable to carry out employment), DR 2–110(B)(4) (withdrawal from employment required when lawyer is discharged by client), DR 6–101(A)(2) (lawyer shall not handle a legal matter without adequate preparation), DR 6–101(A)(3) (lawyer shall not neglect a client matter), DR 7–101(A)(1) (lawyer shall seek lawful objectives of client), DR 7–101(A)(2) (lawyer shall not intentionally fail to carry out contract of employment), DR 7–101(A)(3) (lawyer shall not intentionally prejudice or damage client), DR 7–102(A)(3) (lawyer shall not conceal or fail to disclose information to client), DR 7–102(A)(8) (lawyer shall not knowingly engage in illegal conduct in the representation of a client), and DR 7–106(A) (lawyer shall not disregard court rule).

Cohrt and the complainants testified at the grievance commission hearing consistent with their claims. The commission found the board established Cohrt's conduct in the Black Hawk proceeding violated DR 1–102(A)(1), DR 1–102(A)(4), DR 1–102(A)(5), DR 1–102(A)(6), and DR 6–101(A)(3). Additionally, the commission found Cohrt violated the withdrawal provisions of DR 2–110(B)(2) in the event he felt the case was required to be dismissed. With respect to the Schleusners' proceedings, the commission found the board established that Cohrt's conduct violated DR 1–102(A)(1), DR 1–102(A)(5), DR 1–102(A)(6), DR 6–101(A)(2), DR 6–101(A)(3), DR 7–101(A)(1), DR 7–101(A)(2), and DR 7–101(A)(3). Additionally, the commission found Cohrt violated the withdrawal provisions of DR 2–110(A)(2) and DR 2–110(B)(2). It recommended Cohrt be suspended for sixty-one days.

### III.  Scope of Review.

We review attorney disciplinary matters de novo.  *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard*, 653 N.W.2d 373, 375 (Iowa 2002).

### IV.  Violations.

The commission implicitly rejected the evidence presented by Cohrt that he maintained adequate communication with his clients and explained his decisions that resulted in the dismissal of the lawsuits. We, of course, are not bound by the findings of the commission, but we do give them weight.  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 759 (Iowa 2010).  Moreover, our review of the evidence presented at the commission hearing does not support Cohrt's claims that the dismissals were the result of thoughtful lawyering, rather than neglect and the failure to maintain client communication.  The convincing preponderance of the evidence reveals Cohrt's claims were merely an afterthought to cover for his neglect.  Both cases were replete with classic earmarks of neglect, including numerous requests by opposing counsel for Cohrt to take action, numerous demands by the court for Cohrt to take action, and court filings by Cohrt offering excuses for inaction based on a busy trial schedule or other demands of the practice of law.  The timing of the dismissals and the events preceding the dismissals were also inconsistent with Cohrt's claims.  In the end, Cohrt's claims stand alone, without support, far removed from the evidence and logic.  A convincing preponderance of the evidence supports a finding that Cohrt neglected client matters.

Cohrt also misrepresented the reason the claim against the pest control company was dismissed.  The claim was dismissed because the attorney-fee sanction imposed by the court was not paid as directed.

Cohrt told his clients the case was dismissed because he believed the pest control company had a complete defense to the claim. While we reject the notion that Cohrt made the statement in good faith, Cohrt's statements misrepresented the reason the case was dismissed, whether made in good faith or not. The case was dismissed because Cohrt failed to comply with a court order. This reason was never explained to the Schleusners, and Cohrt's efforts to substitute his purported motive for failing to comply with the court order as a reason for the dismissal constituted purposeful misrepresentation. A convincing preponderance of the evidence revealed Cohrt engaged in conduct involving misrepresentation.

We do not further consider the grounds for misconduct based on the charges that Cohrt failed to timely and properly withdraw from representing his clients once he allegedly formulated his misgivings about the propriety of the claims. The commission concluded Cohrt violated the withdrawal provisions of the code in the event he believed in good faith that the claims alleged in the lawsuits were required to be dismissed under governing law and professional ethics. We refrain from finding violations of our code of professional responsibility based on unsupported, hypothetical propositions.

We conclude Cohrt violated DR 6–101(A)(3) by neglecting client matters. He violated DR 1–102(A)(4) by misrepresenting to his clients the grounds for dismissal of a party to their lawsuit. This same conduct undoubtedly violated other related disciplinary rules, but these two provisions best capture the unethical conduct that occurred and provide a basis to consider discipline for his conduct.

**V. Discipline.**

We have repeatedly discussed our general principles governing the imposition of discipline for attorneys who violate the code of professional responsibility. *See Marzen*, 779 N.W.2d at 767. We consider both aggravating and mitigating circumstances in the imposition of discipline. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 308 (Iowa 2009). In this case, three aggravating circumstances are present. First, Cohrt has been admonished on a prior occasion for neglecting a client matter. A prior admonition is properly considered in determining discipline, especially when it involves the same type of conduct as the conduct subject to discipline. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sprole*, 596 N.W.2d 64, 66 (Iowa 1999). Second, some of Cohrt's statements and claims made before the board were false and asserted to circumvent discipline. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 503 (Iowa 2008) (false assertions to the board constitute aggravating circumstances). Third, Cohrt engaged in two separate, but similar counts of neglect. *See id.* (multiple incidents of neglect warrant a more severe sanction).

The sanction for neglect of client matters "generally ranges from a public reprimand to a six-month suspension." *Id.* at 502. Misrepresentation can give rise to more serious discipline. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Stein*, 603 N.W.2d 574, 575–76 (Iowa 1999) (two-year suspension for dishonestly concealing neglect to client, compounded by prior deceitful conduct); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Clauss*, 530 N.W.2d 453, 454–55 (Iowa 1995) (imposing three-year suspension for dishonesty in court filings); *Comm. on Prof'l Ethics & Conduct v. Conzett*, 476 N.W.2d 43, 45–46 (Iowa 1991) (four-month suspension for misrepresentation to client).

When neglect of a client is accompanied by misrepresentation, harsher discipline is imposed. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett,* 653 N.W.2d 377, 381–82 (Iowa 2002) ("When neglect is compounded by an attorney's misrepresentation, however, a more severe sanction is necessary.").

Considering all the circumstances, we conclude Cohrt should be suspended for a period of not less than three months. Cohrt engaged in two separate instances of neglect, compounded by a misrepresentation to his clients and a past history of client neglect. Instead of acknowledging his neglect, he sought obfuscation, which was not only directed at his clients but also seeped into his dealings with the board and the commission. Cohrt's claims and assertions were largely unsupported by evidence or logic, and his conduct was unbecoming of an Iowa lawyer.

## VI. Conclusion.

We suspend Cohrt's license to practice law with no possibility of reinstatement for three months from the date of the filing of this opinion. This opinion shall apply to all facets of the practice of law. Iowa Ct. R. 35.12(3).

Upon application for reinstatement, Cohrt shall have the burden to show he has not practiced law during the period of suspension and that he meets the requirements of Iowa Court Rule 35.13. Costs are taxed to the respondent pursuant to Iowa Court Rule 35.26(1).

**LICENSE SUSPENDED.**