# IN THE SUPREME COURT OF IOWA

No. 14–2093

Filed April 10, 2015

Amended June 24, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JOHN D. HEDGECOTH,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports an attorney violated several rules of professional conduct and recommends suspension. **LICENSE SUSPENDED.**

Charles L. Harrington and Elizabeth E. Quinlan, for complainant.

John D. Hedgecoth, Des Moines, pro se.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (the Board) charged attorney John D. Hedgecoth with violating multiple rules of professional conduct after the Board received three separate complaints. After a hearing, the Iowa Supreme Court Grievance Commission (the commission) found Hedgecoth violated several rules and recommended suspension of his license for six months plus several conditions of reinstatement.

## I. Background Facts and Proceedings.

Hedgecoth was admitted to the Iowa bar in 1998. He estimates that since being admitted, he has been actively practicing for seven-and-a-half years. He initially practiced law from 1998 to 2005, taking one year off in 2002 to run for political office. From 2005 to 2011, he closed his law practice and worked as a policy advisor and political campaign staffer. After those endeavors were completed, Hedgecoth returned to the practice of law.

In June 2012, while engaged in the practice of law, Hedgecoth signed an employment contract with a gubernatorial candidate. The contract provided for a sliding scale of employment, initially requiring twenty percent of Hedgecoth's time, and gradually increasing over time to a full-time commitment. Accordingly, from January through November 2014, Hedgecoth worked full time for the political campaign and did not actively practice law.

**A. Odell Everett Matter.** In July 2012, shortly after signing the employment contract with the political campaign, Hedgecoth was court appointed to represent Odell Everett Jr. in a postconviction-relief appeal. On October 19, 2012, Hedgecoth was ordered to file a combined certificate and an application to waive filing fees. Hedgecoth did not

comply with the order. Accordingly, on November 6, the clerk of the Iowa Supreme Court sent Hedgecoth a letter informing him default would be entered against his client if the documents were not immediately filed. Hedgecoth again failed to file the required documents, and as a result, on January 30, 2013, the clerk entered a notice of default and assessed a penalty of $150 against Hedgecoth.

Hedgecoth was given an additional fifteen days to cure the default and was warned that noncompliance could result in referral to the Board. The fifteen-day period elapsed with no response from Hedgecoth. Several weeks later, on March 6, Hedgecoth applied for and was granted an extension of time for curing the default. Despite the extension, Hedgecoth still failed to file the required documents, resulting in another notice of default and another penalty of $150. Although he received an express warning that his failure to cure the default could result in a referral to the Board, Hedgecoth took no action. Responding to Hedgecoth's inaction, this court removed Hedgecoth as counsel on May 8 and notified the Board.

On May 9, the Board notified Hedgecoth of the complaint and requested his response. Although he received the notice of complaint, Hedgecoth made no response. On July 10, the Board sent a second notice to Hedgecoth requesting a response to the complaint, and again Hedgecoth acknowledged receipt but did not respond. Accordingly, the Board's administrator sought and we entered an order temporarily suspending Hedgecoth's license to practice law. Hedgecoth eventually responded to the complaint, and the suspension was lifted.

**B. Stephanie Sexton Matter.** On August 16, 2012, Hedgecoth was court appointed as counsel for Stephanie Sexton in a criminal appeal. He filed his appearance on August 17. On October 19, the clerk

of court issued an order directing Hedgecoth to file a combined certificate and application to waive filing fees within fourteen days. Hedgecoth failed to timely file the required documents. The clerk of court issued a notice of default and assessed a penalty of $150 against Hedgecoth for this conduct. The notice again warned Hedgecoth that the Board would be notified if he should fail to cure the default.

On March 6, 2013, Hedgecoth filed the combined certificate and an application to waive filing fees. Hedgecoth further indicated he would prepare a statement of the evidence or proceedings, but he failed to do so. On June 26, the clerk of court entered a second notice of default and assessment of penalty in the Sexton appeal when Hedgecoth failed to timely file a proof brief and designation of appendix. The notice warned the matter would be dismissed if the default was not remedied. Hedgecoth again failed to take responsive action. On July 30, this court removed Hedgecoth as Sexton's counsel and notified the Board.

The Board subsequently mailed Hedgecoth a notice of complaint and requested his response. Hearing no response, the Board sought and we ordered temporary suspension of Hedgecoth's license. Hedgecoth was reinstated five days later after he filed a response to the complaint.

**C. Lisa Howard Matter.** In March 2013, Hedgecoth undertook the representation of Lisa Howard, a defendant in a civil matter. On Howard's behalf, Hedgecoth filed an answer to the original petition and asserted counterclaims. On July 29, opposing counsel in the case filed a notice of serving discovery and subsequently served Hedgecoth with requests for production, interrogatories, and requests for admissions. Hedgecoth did not respond to these discovery requests.

On August 26, opposing counsel filed an amended petition. Hedgecoth did not file an answer. On September 5, plaintiff's counsel

sent Hedgecoth a letter requesting discovery responses. After Hedgecoth failed to respond, opposing counsel filed a motion to compel discovery responses on September 13. Hedgecoth did not file any response or resistance to this motion.

On September 24, opposing counsel served a second set of interrogatories on Hedgecoth, and Hedgecoth again failed to respond. On October 15, the district court entered an order compelling discovery responses. On October 23, opposing counsel filed a motion for sanctions because Hedgecoth had yet to comply with the district court's October 15 order. Hedgecoth did not file a resistance to this motion.

On October 29, opposing counsel requested from Hedgecoth available dates for a deposition of Howard. After Hedgecoth failed to respond to this request, opposing counsel served a notice of deposition of the defendant on November 5. The deposition was scheduled for November 13, but neither Hedgecoth nor his client appeared for the deposition. On November 14, opposing counsel filed a second motion for sanctions, and the district court held a hearing on the matter on November 21.

On November 22, the district court ordered Hedgecoth to file an answer to the second amended petition, provide responses to the first set of discovery requests and the second set of interrogatories, and make his client available for deposition by December 6. The court also ordered Hedgecoth to pay the opposing party over $2100 in costs for attorney fees resulting from Hedgecoth's failures to timely respond to discovery requests and his noncompliance with the court's previous order compelling discovery. However, Hedgecoth failed to produce the requested discovery as ordered and opposing counsel filed a third motion for sanctions on December 6.

On December 13, the district court held a hearing on the third motion for sanctions. Hedgecoth attended the hearing, but arrived late. The district court noted that although Hedgecoth had finally provided interrogatory responses, they were deficient and untimely. Further, the court concluded Hedgecoth had not communicated adequately with opposing counsel and had provided discovery responses that were unresponsive and clearly not in final form.

On December 20, the district court granted the third motion for sanctions, finding Hedgecoth had failed to comply with the district court's November 22 order. The court ordered Hedgecoth to: (1) file an answer to the second amended petition; (2) hand deliver complete responses to the plaintiff's discovery requests to opposing counsel by December 24; (3) make Howard available for deposition by January 8, 2014; and (4) reimburse opposing counsel over $1800 for costs incurred.[1] As an additional sanction, the court dismissed Howard's counterclaims with prejudice.

On January 7, opposing counsel filed a fourth motion for sanctions against Hedgecoth, alleging that Hedgecoth had still not complied with the district court's orders. The motion alleged Hedgecoth had yet to file an answer to the second amended petition or pay the monetary sanction. However, the court did not rule on this motion because the parties reached a settlement and the case was dismissed. On January 16, the district court judge who had granted the three motions for sanctions notified the Board of Hedgecoth's conduct in the Howard case.

---

[1]This new monetary sanction was imposed in addition to the previous award from the November 22 order.

**D. Proceedings Before the Commission.** On January 27, the Board sent Hedgecoth a letter forwarding a copy of its complaint alleging he had violated several rules of professional conduct in representing Everett, Sexton, and Howard. Having heard no response from Hedgecoth, the Board then sent a second letter requesting his response to the complaint within ten days. Hedgecoth acknowledged receipt of both letters, but did not initially provide a response to the complaint. He eventually responded over two months later, on May 21.

Stemming from the Everett, Sexton, and Howard matters, the Board's complaint charged Hedgecoth with violating six Iowa Rules of Professional Conduct: neglect (rule 32:1.3), failure to expedite litigation (rule 32:3.2), failure to obey a court order (rule 32:3.4(c)), failure to respond to a legally proper discovery request (rule 32:3.4(d)), failure to cooperate with the Board (rule 32:8.1(b)), and conduct prejudicial to the administration of justice (rule 32:8.4(d)). The Board served Hedgecoth with a complaint, interrogatories, and requests for production on August 4, 2014. Hedgecoth did not respond to the complaint and requests. On October 29, the commission entered a ruling deeming the Board's allegations admitted by Hedgecoth.

The commission held a hearing on November 5. Hedgecoth attended and appeared pro se. During the hearing, Hedgecoth admitted the allegations against him, acknowledged his inability to handle appellate cases adequately, and stated he has already taken steps to cease his appellate practice. Hedgecoth contended he is especially amenable to rehabilitation given his previous experience teaching legal ethics and professional responsibility. He urged as a mitigating factor his public service as the author of numerous policy proposals for the State of Iowa. Finally, he noted his neglectful conduct resulted from

missteps in the administrative aspects of his part-time law practice while he simultaneously maintained substantial employment as a political operative. Hedgecoth proposed a fifteen-day suspension with auxiliary conditions on reinstatement: (1) sixty additional continuing legal education (CLE) hours on any topic for the current period, (2) practice limitations on appellate work and extralegal employment, (3) a $1500 fine, (4) sixty hours of certified pro bono work within the next year, (5) oversight by an attorney mentor, and (6) an automatic six-month suspension should those conditions not be fulfilled.

Following the hearing, the commission found the Board had proved all of the alleged rule violations. The commission recommended suspension of Hedgecoth's license for a period of no less than six months. Further, it recommended additional conditions after reinstatement: supervision by another licensed attorney for one year, a practice limitation preventing Hedgecoth from representing any client in any appeal, and ten mandatory hours of CLE in the areas of ethics and law office management. In reaching its determination, the commission considered Hedgecoth's pattern of misconduct and his prior misconduct, noting Hedgecoth has already accumulated a significant disciplinary history in the relatively short amount of time he has been practicing law. The commission also found Hedgecoth's previous experience teaching legal ethics and professional responsibility was an aggravating factor.

## II. Scope of Review.

We review attorney disciplinary matters de novo. Iowa Ct. R. 35.11(1). "The Board must prove the attorney's . . . misconduct by a convincing preponderance of the evidence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 470 (Iowa 2014). This standard "places a burden on the Board that is higher than the burden

in civil cases," but "lower than 'clear and convincing,' the highest civil standard of proof." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 201 (Iowa 2015) (citations omitted) (internal quotation marks omitted).

**III. Analysis.**

**A. Rule Violations.** On our de novo review, we address in turn each rule violation alleged by the Board in determining whether the Board carried its burden of proof.

1. *Neglect.* "The Iowa Rules of Professional Conduct no longer expressly refer to neglect. Nevertheless, we have continued to identify and sanction attorney neglect." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 63 (Iowa 2014) (citation omitted). We do so under rule 32:1.3, which provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. We have concluded neglect cases under a previous version of our professional conduct rules provide "precedent for the interpretation and application of rule 32:1.3." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012).

"Neglect involves an attorney's *consistent* failure to perform his or her obligations and indifference about failing to advance the interests of his or her client." *Conroy*, 845 N.W.2d at 63 (emphasis added). Thus, a single missed deadline or inadvertent omission will not usually constitute an ethical violation. *See Van Ginkel*, 809 N.W.2d at 102. Instead, "[v]iolations occur when an attorney fails to appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 537 (Iowa 2013).

We have often found attorneys violated rule 32:1.3 when they consistently or repeatedly missed deadlines, failed to file required documents, or were unreasonably slow to act. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 847 N.W.2d 489, 492 (Iowa 2014) (finding an attorney violated rule 32:1.3 when she failed "to comply with deadlines . . . in nine separate criminal cases" and also failed to pay court-imposed penalties in a prompt manner); *Conroy*, 845 N.W.2d at 65 (finding an attorney violated rule 32:1.3 when he "failed to timely file documents to pursue [six] appeals to which he was appointed"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 668 (Iowa 2013) (finding an attorney violated rule 32:1.3 when her handling of a particular matter "was characterized by untimely and incomplete discovery responses"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 749 N.W.2d 666, 669 (Iowa 2008) (finding an attorney "neglected two client matters by failing to comply with appellate deadlines"); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 552 (Iowa 2004) (finding an attorney committed neglect because in five different appeals he "failed to comply with the rules of appellate procedure, as well as the subsequent notices to cure the defaults"); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 380 (Iowa 2002) (finding an attorney committed neglect "by failing to comply with appellate deadlines" or file required documents).

In this case, Hedgecoth repeatedly missed deadlines in two separate appeals and received several default notices. Fortunately, the clients' appeals were not dismissed, but "only because this court intervened and ordered him removed." *Conroy*, 845 N.W.2d at 65. Further, Hedgecoth repeatedly delayed discovery responses in the Howard matter and was sanctioned multiple times. On our de novo

review of the record we conclude a convincing preponderance of the evidence establishes Hedgecoth violated rule 32:1.3.

2. *Failing to expedite litigation.* Rule 32:3.2 provides, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. Prof'l Conduct 32:3.2. We require lawyers to make reasonable efforts to expedite litigation because "[d]ilatory practices bring the administration of justice into disrepute." *Id.* cmt. [1]. In failure-to-expedite cases, "[t]he question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay." *Id.*

"An attorney violates this rule by failing to appear for status conferences and respond to court inquiries. Similarly, an attorney violates this rule [by] failing to comply with orders compelling discovery responses." *Kieffer-Garrison*, 847 N.W.2d at 492–93 (citation omitted); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 548 (Iowa 2012) (finding a violation of rule 32:3.2 when the attorney "failed to participate in discovery in a timely manner"). Two of our recent decisions provide specific examples of conduct violating rule 32:3.2. In *Kieffer-Garrison*, the attorney's "serial failures to comply with the requirements of this court's procedural rules governing the timely presentation and progression of appeals" violated rule 32:3.2. *Kieffer-Garrison*, 847 N.W.2d at 492–93. And in *Kennedy*, we found the attorney violated rule 32:3.2 when she "did not file anything in two postconviction relief proceedings . . . and failed to respond to discovery requests" in another matter. *Kennedy*, 837 N.W.2d at 669.

Hedgecoth's actions closely resemble the conduct we have previously determined violates rule 32:3.2. In both the Everett and Sexton appeals, he repeatedly failed to follow court rules governing timely

presentation and progression of appeals. In the Howard matter, Hedgecoth failed to respond to discovery requests and the opposing party's motions to compel discovery. We find Hedgecoth violated rule 32:3.2.

3. *Failing to obey a court order.* Rule 32:3.4(c) provides, "A lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Iowa R. Prof'l Conduct 32:3.4(c). This rule promotes "[f]air competition in the adversary system" by prohibiting obstructive discovery tactics. *Id.* cmt. [1]. Knowing disobedience occurs when noncompliance occurs notwithstanding the attorney's actual knowledge of the court order. *Cunningham,* 812 N.W.2d at 548; *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 813 (Iowa 2007).

In *Cunningham,* the attorney "was ordered to serve all outstanding discovery by [a particular date] or else appear at a hearing on [a pending] motion for sanctions." *Cunningham,* 812 N.W.2d at 548. When Cunningham provided incomplete discovery responses and also did not attend the hearing, we found his conduct violated rule 32:3.4(c). *Id.*

On October 4, 2013, in the Howard matter, the court entered an order compelling discovery responses by October 15. Hedgecoth did not provide discovery responses by October 15. On November 21, Hedgecoth represented to the court that he could provide responses by November 27. Relying on this representation, the court entered another order on November 22 directing Hedgecoth to respond to discovery requests by November 27. Hedgecoth did not provide the responses by November 27, or even by December 4, one week later. Thus, Hedgecoth disobeyed two court orders by failing to provide timely discovery responses. We find Hedgecoth violated rule 32:3.4(c).

4. *Failing to comply with a legally proper discovery request.* In contrast to rule 32:3.4(c), which prohibits disobeying a court order, rule 32:3.4(d) prohibits lawyers from "fail[ing] to make a reasonably diligent effort to comply with a legally proper discovery request by an opposing party." Iowa R. Prof'l Conduct 32:3.4(d). In the Howard matter, the court granted several motions to compel and motions for sanctions filed by opposing counsel. Each of these motions were filed because Hedgecoth repeatedly failed to provide timely discovery responses to opposing counsel's proper requests. On our de novo review, we find Hedgecoth violated rule 32:3.4(d).

5. *Cooperation with the Board.* Rule 32:8.1(b) prohibits lawyers from "knowingly fail[ing] to respond to a lawful demand for information from an admissions or disciplinary authority." *Id.* r. 32:8.1(b). "[W]e expect and demand that attorneys cooperate with discipline investigations." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins*, 556 N.W.2d 456, 457 (Iowa 1996); *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 381 (Iowa 2007); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 821 (Iowa 2004). "We have inferred an attorney's knowing failure to respond when there is proof the attorney received the Board's inquiries and yet failed to provide the information sought." *Nelson*, 838 N.W.2d at 540; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 604–05 (Iowa 2011); *see also Comm. on Prof'l Ethics & Conduct v. Paulos*, 410 N.W.2d 260, 261 (Iowa 1987) (finding it "troublesome" that the attorney received a notice by certified letter but failed to respond).

Here, we find Hedgecoth received multiple inquiries from the Board. In the Everett matter, Hedgecoth acknowledged receipt of a letter from the Board on June 3, 2013, but did not respond. He again failed to

respond after he received a second certified letter sent by the Board. Hedgecoth also ignored two of the Board's requests for responses to complaints in connection with the Sexton matter. These failures to respond to the Board eventually led to his temporary suspension in January 2014.

Although the Board alleged Hedgecoth violated rule 32:8.1(b), the commission made no finding on this particular allegation. Nonetheless, on our de novo review, we find Hedgecoth violated rule 32:8.1(b) because he received the Board's inquiries, but failed to respond.

6. *Conduct prejudicial to the administration of justice.* Rule 32:8.4(d) prohibits "conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). "An attorney's failure to timely cooperate with disciplinary authorities is prejudicial to the administration of justice, violating not only rule 32:8.1 but also rule 32:8.4(d)." *Nelson*, 838 N.W.2d at 540; *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 60 (Iowa 2009); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 331 (Iowa 2009). "Ignoring deadlines and orders, which results in default notices from the clerk of court, . . . is [also] prejudicial to the administration of justice." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 530 (Iowa 2011); *accord Nelson*, 838 N.W.2d at 540.

We have already found Hedgecoth violated rule 32:8.1(b). Rule 32:8.1(b) and rule 32:8.4(d) are interrelated. *See Nelson*, 838 N.W.2d at 540. Hedgecoth's neglect of multiple cases caused the court to prepare and send default notices and ultimately required this court to remove him as counsel in two appeals. Accordingly, we find Hedgecoth violated rule 32:8.4(d). *See id.* at 541; *Knopf*, 793 N.W.2d at 530.

**B. Sanction.** We now turn to the determination of an appropriate sanction in this case.

1. *General principles.* When we review attorney disciplinary matters, we "may impose a lesser or greater sanction than the discipline recommended by the grievance commission." Iowa Ct. R. 35.11(1). "We give respectful consideration to the commission's recommendation. However, the issue of appropriate sanction is exclusively within this court's authority." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 213 (Iowa 2014). There is no standard sanction for any individual rule violation, but "previous cases may assist in crafting a sanction." *Conroy*, 845 N.W.2d at 66. To arrive at an appropriate sanction,

> we consider the nature of the violations, the need for deterrence, the need to protect the public, the need to preserve the legal profession's reputation, and the lawyer's fitness to practice law. We also consider mitigating and aggravating circumstances, including companion violations, repeated neglect, and the attorney's disciplinary history.

*Id.* (citation omitted).

2. *Aggravating and mitigating circumstances.* The record in this case reveals several aggravating factors affecting our determination of the appropriate sanction. First, we consider prior discipline. *See, e.g.*, *Conroy*, 845 N.W.2d at 67; *Nelson*, 838 N.W.2d at 544; *Kennedy*, 837 N.W.2d at 677. Unfortunately, this proceeding is not Hedgecoth's first experience with disciplinary matters. In 2006, he was suspended for over six months for failing to respond to inquiries from the Board. In July 2007, he was publicly reprimanded for failing to file timely briefs in an appeal. In November 2007, he was suspended for failing to fulfill client security commission and CLE requirements. And in 2013 and 2014, he was suspended twice for a total of eight days for his failures to

respond to the Board about the matters giving rise to this proceeding. Given that some of these prior instances of discipline were imposed for conduct almost identical to the conduct at issue in this proceeding, Hedgecoth "surely was aware that future similar conduct would warrant a sanction." *Daggett*, 653 N.W.2d at 381; *see also Conroy*, 845 N.W.2d at 67 (concluding an attorney who had "been suspended twice with escalating sanctions for neglect of client matters" was "on the clearest of notice regarding his failure to meet his ethical responsibilities," and noting "neglect has become an unfortunate but recurrent theme"); *Nelson*, 838 N.W.2d at 544 (concluding that prior discipline, "especially that of the same nature as before the court presently, reflects negatively" on an attorney's fitness to practice law).

"[F]ailure to cooperate with the formal disciplinary process is an aggravating factor." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen*, 814 N.W.2d 233, 240 (Iowa 2012); *accord Nelson*, 838 N.W.2d at 544; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schumacher*, 723 N.W.2d 802, 805 (Iowa 2006). We consider Hedgecoth's delayed responses to the Board an aggravating factor here.

Lastly, we consider a specific portion of Hedgecoth's career experience to be an aggravating factor. At the hearing before the commission, Hedgecoth stated for the first six years of his practice, he taught legal ethics and professional responsibility. Just as we consider attorneys' extensive *overall* experience to be an aggravating factor, one who teaches ethics should certainly be well aware of his responsibilities. *See, e.g., Barnhill*, 847 N.W.2d at 486; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 436 (Iowa 2014); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCuskey*, 814 N.W.2d 250, 258 (Iowa 2012).

We acknowledge one mitigating factor: The record does not reveal by a convincing preponderance of the evidence that any of Hedgecoth's clients suffered harm. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 669 (Iowa 2012) (considering lack of harm to clients to be a mitigating factor); *see also Eslick*, 859 N.W.2d at 203; *cf. Schumacher*, 723 N.W.2d at 805 (considering harm to clients an aggravating factor); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker*, 712 N.W.2d 683, 686 (Iowa 2006) (same).

3. *Cases involving similar conduct.* Having identified several aggravating and mitigating factors, we next compare this case with prior cases involving similar facts and rule violations. As we have explained, although we take each case's unique circumstances into account when reviewing disciplinary proceedings, we recognize that prior cases "may assist in crafting a sanction." *Conroy*, 845 N.W.2d at 66; *see also Eslick*, 859 N.W.2d at 202 ("[W]e evaluate each case individually but still consider prior cases instructive.").

Hedgecoth's principal violation was his lack of diligence. This affected three separate client matters and also showed in his failure to respond to the Board's inquiries. Discipline for these types of violations "generally ranges from a public reprimand to a six-month suspension." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hohenadel*, 634 N.W.2d 652, 655 (Iowa 2001); *accord Conroy*, 845 N.W.2d at 66; *Moorman*, 683 N.W.2d at 553. "Even so, we have imposed lengthy suspensions when appropriate." *Conroy*, 845 N.W.2d at 66. A lengthy suspension may be appropriate if the neglect is one violation among many much more serious ones or occurs amidst aggravating circumstances. *Id.*; *see also Kieffer-Garrison*, 847 N.W.2d at 495; *Kennedy*, 837 N.W.2d at 675.

We have previously imposed a three-month suspension when an attorney committed neglect only with respect to one client matter. *Humphrey*, 812 N.W.2d at 669. In *Humphrey*, a married couple hired the attorney to negotiate an insurance settlement. *Id.* at 662. After initially pursuing the settlement, he "ceased responding to inquiries from [his clients] regarding the ongoing status of settlement discussions." *Id.* The clients eventually "completed their negotiations with [the insurer] on their own." *Id.* at 663. We acknowledged the lawyer neglected only a single client matter, caused no tangible harm, and did not profit from his actions. *Id.* at 669. We also noted that while the attorney initially ignored the Board's communications, he eventually testified before the commission and admitted the violations. *Id.* However, despite these factors, we concluded a three-month suspension was appropriate because the attorney's license had been suspended twice before—on one occasion for neglect (sixty days), and on another occasion for neglect and other misconduct (three years). *Id.*

We also imposed a three-month suspension when an attorney neglected two client matters. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cohrt*, 784 N.W.2d 777, 783 (Iowa 2010). In *Cohrt*, the lawyer "repeatedly failed to respond to interrogatories and requests for production of documents" propounded by opposing counsel. *Id.* at 779. Because of the lawyer's nonresponsiveness, the court imposed sanctions in one matter, and the attorney avoided sanctions in the second matter when it was dismissed before a hearing could be held. *See id.* at 779–80. We noted the lawyer had a history of neglect that resulted in a previous private admonition. *Id.* at 779, 783. We also found it significant that he had neglected multiple matters. *Id.* at 783. Finally, we concluded a suspension of three months was warranted because the lawyer did not

acknowledge his neglect, instead insisting his conduct was ethically proper. *See id.*

When we have imposed suspensions exceeding three months for attorney neglect, the attorney's lack of diligence has often been exacerbated by other misconduct or aggravating factors. For example, we have twice imposed a six-month suspension when the attorney's neglect spanned across multiple matters and caused clients harm. *Schumacher*, 723 N.W.2d at 805 (three matters); *Walker*, 712 N.W.2d at 686 (four matters). Similarly, we have said a six-month suspension is warranted when an attorney engages in misrepresentation alongside neglect. *See Walker*, 712 N.W.2d at 684–86. Yet, even without misrepresentation or harm to clients, we have concluded more widespread neglect made a six-month suspension appropriate. *Conroy*, 845 N.W.2d at 67 (concluding an attorney should be suspended for six months because he neglected seven matters even after he had previously been suspended for sixty days for neglect and other violations). And in *Kennedy*, when *all* of these aggravating factors—multiplicity of violations, harm to clients, and additional misconduct—were present, we suspended the attorney for one year. *See Kennedy*, 837 N.W.2d at 677.

We conclude a three-month suspension is appropriate here. This case is more like *Humphrey* than *Schumacher* or *Walker*. Although Hedgecoth neglected multiple matters, his neglect did not cause any demonstrable financial or other harm to clients, nor was it accompanied by auxiliary misrepresentation or misconduct. Further, despite his initial unresponsiveness, Hedgecoth eventually testified before the commission and admitted the violations. *See Humphrey*, 812 N.W.2d at 669 ("[A]lthough [Humphrey] did not respond to two letters from the Board, he . . . did testify at the committee hearing, and did ultimately admit to the violations he was charged with.").

Although we impose a lesser sanction than the commission recommended, we reject Hedgecoth's assertion that his part-time practice and extralegal employment should afford him leniency. We have said "[l]awyers do not shed their professional responsibility in their personal lives." *Comm. on Prof'l Ethics & Conduct v. Millen*, 357 N.W.2d 313, 315 (Iowa 1984). Along the same lines, lawyers who practice part-time are not held to a lower standard of professionalism. *See Comm. on Prof'l Ethics & Conduct v. O'Callaghan*, 436 N.W.2d 51, 52 (Iowa 1989) (noting the attorney was "practicing only part-time," yet applying the same ethical standards to his conduct as would apply to an attorney practicing full time).

Finally, we decline to adopt any of the conditions of reinstatement recommended by the commission and requested by Hedgecoth. We have often declined conditions like these. *See, e.g.*, *Conroy*, 845 N.W.2d at 68 (declining to adopt the commission's recommendation that the attorney complete a basic skills course as a condition of reinstatement); *Kennedy*, 837 N.W.2d at 677 (declining to impose an "attorney mentor" requirement); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 871 (Iowa 2010) (declining to adopt the commission's recommendation that, before applying for reinstatement, the attorney should "submit evidence of completing appropriate [CLE]"). In particular, we have declined to impose supervision of an attorney as a condition for readmission because "neither the court nor the bar has effective machinery in place for such supervision." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kirlin*, 741 N.W.2d 813, 819 (Iowa 2007) (per curiam); *accord Lickiss*, 786 N.W.2d at 871–72; *Comm. on Prof'l Ethics & Conduct v. Thomas*, 495 N.W.2d 684, 687 (Iowa 1993).[2] Further, we have said

---

[2]We imposed a supervision requirement in some older cases. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Scheetz*, 549 N.W.2d 828, 833 (Iowa 1996)

when violations are based on neglect rather than incompetence, "[s]upervision . . . would accomplish no useful purpose." *Thomas*, 495 N.W.2d at 687; *see also Kirlin*, 741 N.W.2d at 819. And although the commission is authorized by court rule to recommend practice limitations, Iowa Ct. R. 35.10, we are satisfied that Hedgecoth's voluntary commitment to refrain from representing clients on appeal will provide adequate assurance against recurrence of the conduct described above. *Cf. Lickiss*, 786 N.W.2d at 871 (considering the attorney's "voluntary cessation of law practice" to be a sufficient remedial effort).

## IV. Conclusion.

We suspend Hedgecoth's license to practice law in this state indefinitely with no possibility of reinstatement for three months from the date this opinion is filed. The suspension applies to "all facets of the ordinary law practice." Iowa Ct. R. 35.13(3). Upon application for reinstatement, Hedgecoth must establish he has not practiced law during his suspension, has complied with the notification requirements of Iowa Court Rule 35.23, and has complied with the reinstatement procedures of Iowa Court Rule 35.14. Costs are taxed to Hedgecoth pursuant to Iowa Court Rule 35.27(1).

**LICENSE SUSPENDED.**

All justices concur except Zager, J., who takes no part.

---

(acknowledging Scheetz had voluntarily ceased private practice, but stating if he ever returned he would be required to align himself with an experienced mentor before undertaking probate or estate matters); *Comm. on Prof'l Ethics & Conduct v. Conzett*, 476 N.W.2d 43, 46 (Iowa 1991) (prohibiting an attorney from accepting certain types of cases after reinstatement "unless he . . . associates with a lawyer experienced in that type of practice"). However, we have declined to impose this condition since 2007, and we continue to follow that path today. *See Kirlin*, 741 N.W.2d at 819; *cf. Kennedy*, 837 N.W.2d at 677–78 (declining to impose a condition "which we have not utilized since 2004").