# IN THE SUPREME COURT OF IOWA

No. 13–1871

Filed April 4, 2014

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JAMES STEPHEN CONROY,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent committed numerous violations of the rules of professional conduct and recommends suspension. **LICENSE SUSPENDED.**

Charles L. Harrington and David J. Grace, Des Moines, for complainant.

James S. Conroy, Mount Vernon, pro se.

**ZAGER, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against the respondent, James S. Conroy, alleging he violated the Iowa Rules of Professional Conduct. After a hearing, a division of the Grievance Commission of the Supreme Court of Iowa found Conroy violated numerous provisions of our rules of professional conduct. The commission recommended we suspend Conroy's license for six months and require that he complete a basic skills course before being reinstated. Upon our de novo review, we concur in most of the findings of rule violations and agree a six-month suspension is appropriate.

## I. Background Facts and Proceedings.

James Conroy is an Iowa attorney admitted to practice in 2003. After his admission, Conroy worked for about six months for a private firm with offices in Grinnell and Newton. He then spent the next two years as an assistant county attorney in Black Hawk County. In 2006, Conroy established a solo practice in Cedar Rapids. Conroy's practice consisted mostly of representing criminal defendants on a court-appointed basis in Black Hawk, Johnson, Linn, and Scott Counties.

On August 1, 2013, the Iowa Supreme Court Attorney Disciplinary Board (Board) filed a one-count complaint alleging Conroy violated the Iowa Rules of Professional Conduct. The alleged violations stemmed from Conroy's court-appointed representation of Christopher Brown, Richard Brown, James Gill Jr., Ravin Miller, Joshua Strother, and Todd Wiese in their appeals. The alleged facts were generally the same in each of the six cases. After being appointed appellate counsel, Conroy neglected the appeals. Default notices were issued to Conroy by the Iowa Supreme Court, and he failed to cure the defaults. His failure to cure the defaults subjected each appeal to dismissal. Rather than dismiss each

appeal, however, in each case the Iowa Supreme Court removed Conroy as appellate counsel and new counsel was appointed.

Based on these facts, the Board alleged Conroy violated Iowa Rules of Professional Conduct 32:1.1 (requiring competence), 32:1.3 (requiring diligence), 32:1.4 (requiring communication with clients), 32:1.16(a) (prohibiting representation of a client under certain circumstances), 32:3.2 (requiring reasonable efforts to expedite litigation), and 32:8.4(d) (prohibiting conduct prejudicial to the administration of justice). Conroy answered the complaint on August 29, admitting the Board's allegations.

On September 23, the Board amended its complaint to include a second count against Conroy. The Board alleged Conroy was appointed to represent Darnell Demery in his postconviction relief proceeding. The Board alleged Conroy did not communicate with Demery and neglected the case, failing to make a single filing in the year he represented Demery. After Demery moved to have a new attorney appointed, Conroy was removed from the case in June 2013.

On these facts, the Board alleged violations of Iowa Rules of Professional Conduct 32:1.1, 32:1.3, 32:1.4, 32:3.2, and 32:8.4(d). Conroy never responded to the allegations in count two of the Board's amended complaint. Consequently, the Board moved to have the allegations of count two deemed admitted under Iowa Court Rule 36.7. The commission granted the motion and limited the scope of the disciplinary hearing to the issue of the appropriate sanction.

At the disciplinary hearing conducted in October, the Board presented evidence of Conroy's violations. Conroy appeared at the hearing and admitted to the violations contained in the complaints. However, he asked for leniency from the commission. He explained that he was unfamiliar with appeal procedures, and rather than educate

himself to these procedures, he simply set them aside to concentrate on more familiar work. He did not understand that appeals were time sensitive. Conroy acknowledged that he made no attempts to determine any procedural deadlines by consulting the appellate rules, seeking the assistance of an experienced attorney, or consulting with the appellate defenders. Conroy had never filed an appeal before signing up to be court-appointed on these appeal cases. Conroy denied any substance abuse or mental health problems.

In November, the commission issued its findings, conclusions, and recommendation. In addition to the facts noted above, the commission recounted Conroy's disciplinary history. Conroy has been temporarily suspended on three occasions, in September and December 2010, and in August 2013.[1] In September 2011, the Board admonished Conroy for ceasing work on a client's case without informing the client he had done so. In April 2013, the Board admonished Conroy for failing to share documents filed by the State with his client in a postconviction relief proceeding. In addition, in February 2011, this Court suspended Conroy's license for sixty days for numerous violations of the rules of professional conduct. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 795 N.W.2d 502, 507 (Iowa 2011).

The commission found Conroy committed the violations alleged by the Board. It recommended Conroy's license be suspended for 180 days. The commission also recommended Conroy complete a basic skills course as a condition of reinstatement.

---

[1]The August 2013 suspension arose from Conroy's failure to cooperate with the Board in these proceedings. Conroy has since been reinstated.

## II. Standard of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Strand*, 841 N.W.2d 600, 603 (Iowa 2014). The Board must prove misconduct by a convincing preponderance of the evidence, a burden less than proof beyond a reasonable doubt but greater than the burden in the typical civil case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Khowassah*, 837 N.W.2d 649, 652 (Iowa 2013). If the Board meets its burden and proves misconduct, we are not bound to impose the sanction recommended by the commission. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 9 (Iowa 2012).

## III. Discussion.

**A. Violations.** In count one of the Board's complaint, it alleged Conroy violated six professional conduct rules. Conroy admitted these allegations in his answer. In count two of its complaint, the Board alleged five violations. Conroy never filed an answer to this count, and these allegations were deemed admitted. Iowa Ct. R. 36.7; *Strand*, 841 N.W.2d at 603. The commission found Conroy committed the violations alleged in both counts. Upon our review, we agree with all but one of the commission's findings.

The Iowa Rules of Professional Conduct no longer expressly refer to neglect. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012) (comparing the previous version of disciplinary rule that prohibited neglect to a current rule that requires diligence and giving them the same interpretation). Nevertheless, we have continued to identify and sanction attorney neglect. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 666, 669 (Iowa 2012) (stating an attorney's "core violation" was neglect and

imposing a three-month suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 531, 535 (Iowa 2011) (finding an attorney competent but neglectful and, after considering other violations, imposing a one-year suspension). Neglect involves an attorney's consistent failure to perform his or her obligations and indifference about failing to advance the interests of his or her client. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 723 N.W.2d 439, 441 (Iowa 2006); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004). In addition, neglect may involve a conscious disregard for a lawyer's responsibility to his or her client. *Moorman*, 683 N.W.2d at 551. Neglect can embrace violations of various professional conduct rules. *See Humphrey*, 812 N.W.2d at 665 (finding neglect where attorney violated Iowa Rules of Professional Conduct 32:1.3 (diligence), 32:1.4(a)(3) (keeping client informed), and 32:1.4(a)(4) (complying with requests for information)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010) (finding neglect where an attorney violated rules 32:1.1 (competence), 32:1.3 (diligence), and 32:3.2 (expediting litigation)). We must evaluate Conroy's conduct under the specific rules he is alleged to have violated.

Iowa Rule of Professional Conduct 32:1.1 requires competence from attorneys. *See* Iowa R. Prof'l Conduct 32:1.1. To prove an attorney violated this rule, it must be proved "the attorney did not possess the requisite legal knowledge and skill to handle the case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 293 n.2 (Iowa 2011). In *Iowa Supreme Court Attorney Disciplinary Board v. Kennedy*, we were careful to point out that mere neglect of client matters does not establish a lack of competence. 837 N.W.2d 659, 668 (Iowa 2013). Regarding the Demery matter, Conroy testified he had handled postconviction relief

proceedings before he was appointed to Demery's case. Although Conroy neglected Demery's proceeding, nothing in the record establishes Conroy lacked the skill and knowledge to handle it. *See id.* (finding attorney that neglected client matters did not violate competency rule). Accordingly, we conclude Conroy did not violate rule 32:1.1 with respect to Demery's postconviction relief proceeding.

Conroy's failings in the six appeals are a different matter. Conroy admitted he had no experience with appeals, but he did not try to gain competence. He did not reach out to an experienced attorney for assistance. Nor did he read the rules of appellate procedure to educate himself as to necessary filings or deadlines. He admitted that he did not understand appeals were time sensitive and that he was unsure on how to proceed with the appeals. Regarding the six appeals to which he was appointed and removed, we conclude Conroy violated rule 32:1.1.

The Board alleged that Conroy violated Iowa Rule of Professional Conduct 32.1.16(a) in connection with the six appeals to which he was appointed. This rule provides that "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the representation will result in violation of the Iowa Rules of Professional Conduct." Iowa R. Prof'l Conduct 32:1.16(a)(1). As discussed, Conroy knew he lacked an understanding of the appeals process, yet he signed up for those cases. Instead of withdrawing from the cases he received, he set them aside for another day, got busy, and missed filing deadlines which necessitated his removal from the cases. We conclude Conroy violated rule 32:1.16(a)(1).

Iowa Rule of Professional Conduct 32:1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client." A violation of this rule arises not from inadvertent acts or omissions or

from missing a single deadline, but from consistently failing to perform functions required of an attorney or from repeatedly missing deadlines. *See Van Ginkel*, 809 N.W.2d at 102 (explaining the application of the rule in the context of probate cases). Because he failed to timely file documents to pursue the appeals to which he was appointed, Conroy defaulted on all six of them, and he did not cure the defaults after being notified of his opportunity to do so. *See Moorman*, 683 N.W.2d at 552 (finding neglect when an attorney failed to cure defaults in five appeals). Conroy's clients were not more significantly prejudiced only because this court intervened and ordered him removed. *Cf. id.* (noting reinstatement of a dismissed appeal did not "cure the prior neglect"). With respect to the violations arising from Demery's postconviction relief proceeding, Conroy spoke with Demery only once in the year that he represented him, and he filed nothing with the court. Conroy thus failed to act diligently. *See Kennedy*, 837 N.W.2d at 668–69 (holding an attorney's failure to file any documents in one postconviction relief proceeding and failure to communicate with her client in another case violated professional conduct rule 32:1.3). We conclude Conroy violated rule 32:1.3 in each case.

Iowa Rule of Professional Conduct 32:1.4 requires that, among other things, an attorney "keep the client reasonably informed about the status of the matter" and "promptly comply with reasonable requests for information." In connection with the Demery matter, Conroy spoke with his client just once in a year and failed to respond to his requests for information. The record indicates Conroy failed to communicate with his six appeal clients as well. We conclude Conroy violated rule 32:1.4.

Related to Conroy's lack of communication is his failure to move litigation along. Iowa Rule of Professional Conduct 32:3.2 requires a

lawyer to "make reasonable efforts to expedite litigation consistent with the interests of the client." We have held conduct like Conroy's in failing to file documents, pursue appeals, and meet deadlines violates this rule. *See, e.g., Kennedy*, 837 N.W.2d at 669 (finding a violation of rule 32:3.2 where an attorney "did not file anything in two postconviction relief proceedings"); *Lickiss*, 786 N.W.2d at 867 (finding a violation of rule 32:3.2 where an attorney failed to "publish the required notices, file the required reports, and cure the numerous delinquencies" in four probate cases); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 284 (Iowa 2010) (finding an attorney violated rule 32:3.2 by failing to prosecute four appeals). We conclude Conroy violated rule 32:3.2.

The same conduct described above also violates Iowa Rule of Professional Conduct 32:8.4(d). This rule prohibits "conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). An attorney violates rule 32:8.4(d) when his or her "misconduct results in additional court proceedings or causes court proceedings to be delayed or dismissed." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 180 (Iowa 2013). Failing to comply with appellate deadlines is prejudicial to the administration of justice. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 380 (Iowa 2002). With respect to all seven matters at issue here, Conroy's neglect resulted in substantial delays and extraordinary expenditure of court time and resources. This includes substantial time and resources of the clerk of the appellate courts, clerk of court, district court, and this court as well. Accordingly, we conclude Conroy violated rule 32:8.4(d).

In sum, we conclude Conroy violated all the rules alleged by the Board except the alleged violation of rule 32:1.1 in connection with

Demery's postconviction relief proceeding. We now must determine the appropriate sanction for Conroy's misconduct.

**B. Sanction.** In fashioning the sanction in an attorney disciplinary case, we consider the nature of the violations, the need for deterrence, the need to protect the public, the need to preserve the legal profession's reputation, and the lawyer's fitness to practice law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 831 N.W.2d 194, 201 (Iowa 2013). We also consider mitigating and aggravating circumstances, including companion violations, repeated neglect, and the attorney's disciplinary history. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 821 N.W.2d 873, 880 (Iowa 2012). Although previous cases may assist in crafting a sanction, the sanction imposed in a case must be fixed according to its circumstances. *Id.*

Conroy's principal violation was neglect in six appeals and one postconviction relief proceeding. "Our past sanctions in cases where neglect was the principal violation have generally ranged from a public reprimand to a six-month suspension." *Humphrey*, 812 N.W.2d at 666; *accord Ireland*, 723 N.W.2d at 442 ("When neglect of client matters is the principle violation, we have observed that the discipline generally falls within the range of a public reprimand to a six-month suspension."). Even so, we have imposed lengthy suspensions when appropriate. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Pracht*, 656 N.W.2d 123, 124, 126 (Iowa 2003) (suspending for one year the license of an attorney who neglected his client's probate matter after being ordered by the court to refrain from representing clients in probate matters); *see also Dunahoo*, 799 N.W.2d at 535 (imposing a one-year suspension on an attorney after considering attorney's neglect, other violations, and aggravating and mitigating circumstances). These longer suspensions

typically involve neglect compounded by "much more serious violations or aggravating circumstances." *Humphrey*, 812 N.W.2d at 668. Conroy's conduct does not warrant such a long suspension.

In *Moorman*, for example, we imposed a two-year suspension on an attorney "described as the worst violator of the time requirements of the rules of appellate practice in the state." 683 N.W.2d at 551, 554. Moorman neglected one personal injury claim and five criminal and juvenile appeals. 683 N.W.2d at 550–51. Moorman's serial neglect alone was not the basis for the severe sanction. *See id.* at 553 (describing conduct that reflected adversely on Moorman's fitness to practice). Moorman also offered to commit fraud and tried to settle an attorney malpractice claim with his client "in a desperate effort to diminish the impact of his neglect." *Id.*

In *Kennedy*, we imposed a one-year suspension on an attorney whose neglect of multiple clients resulted in financial harm and cases being delayed or dismissed. 837 N.W.2d at 677. Kennedy, like Conroy, had a previous sixty-day suspension. *Id.* Kennedy, unlike Conroy however, compounded her neglect by "recklessly leveling groundless charges against public officers." *Id.* The serious aggravating circumstances and rule violations that factored into the lengthy suspensions for Moorman and Kennedy are not at play here, so imposing a similar suspension on Conroy would be inappropriate.

In *Iowa Supreme Court Attorney Disciplinary Board v. Walker*, an attorney neglected four matters and made misrepresentations to conceal his neglect. 712 N.W.2d 683, 684–85 (Iowa 2006). We considered Walker's depression and lack of a disciplinary record to be mitigating factors. *Id.* at 686. On the other hand, we found the financial harm done to Walker's clients, and his failure to respond to the Board's

inquiries, aggravated his misconduct. *Id.* For this combination of factors and misconduct, we imposed a six-month suspension. *See id.*

In *Humphrey,* an attorney's neglect affected only one client who suffered no financial harm. 812 N.W.2d at 669. Like Conroy, "Humphrey did not profit from his actions (or inaction) and did not engage in deceit or misrepresentation to either his clients or the court." *See id.* Humphrey had a troubled disciplinary history, including a sixty-day suspension like Conroy. *See id.* Not citing a single mitigating factor, we imposed a three-month suspension. *See id.*

Based on our review of these cases and our de novo review of the record, we conclude a six-month suspension is appropriate. If Conroy, like Humphrey, had neglected only a single matter, his misconduct might merit no more than a three-month suspension. But Conroy neglected seven matters, three more than even the attorney in *Walker.* In the six appeals, it was necessary for this court to intervene to prevent dismissal. In the seventh proceeding, Demery complained of Conroy's neglect at least twice before he received a new attorney. Appointing new attorneys to the cases demanded the time, attention, and energy of judges, justices, and court staff. Conroy's neglect hurt not only his clients, but also interfered with the administration of justice.

Conroy, unlike Walker, made no misrepresentations to hide his neglect. *See Walker,* 712 N.W.2d at 684–85 (describing Walker's neglect and misrepresentations). However, Conroy has a significant disciplinary history which aggravates his misconduct. *See Kennedy,* 837 N.W.2d at 674 (considering an attorney's disciplinary history as an aggravating factor). The Board has twice admonished Conroy, and this court has three times temporarily suspended him. Finally, just three years ago Conroy was suspended for sixty days for violations based in part on

neglect of two client matters. *See Conroy*, 795 N.W.2d at 504–05, 507. For Conroy, it seems, neglect has become an unfortunate but recurrent theme.

At the hearing on sanctions, Conroy asked the commission to consider as mitigating factors the effect a lengthy suspension would have on his ability to resume practicing law and on his family's financial well-being. Conroy also displayed remorse, assured the commission he would not accept appeals after he resumed practicing law, and noted that none of the individuals he represented were financially harmed by his misconduct. Although we are sympathetic to Conroy's financial difficulty, we decline to give any significant weight to these claims of mitigation. These are similar claims that Conroy made at the time of his last suspension. *See id.* at 505. However, his same conduct has continued and is now more prevalent. In light of the numerous instances of neglect, Conroy's past disciplinary record, and additional violations, we conclude a six-month suspension is appropriate.

In concluding a six-month suspension is appropriate, we note that Conroy has now been suspended twice with escalating sanctions for neglect of client matters. He is on the clearest of notice regarding his failure to meet his ethical responsibilities in this regard. The two suspensions will be an aggravating factor should there be future proceedings involving Conroy where neglect of client matters is established. *Cf. Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 674 N.W.2d 129, 130, 139 (Iowa 2004) (escalating disciplinary sanction on an attorney who "failed to modify his behavior" despite prior discipline).

Finally, we decline to adopt the commission's recommendation that Conroy complete a basic skills course as a condition of reinstatement.

As noted, Conroy testified that when he resumes practicing law he does not intend to represent clients in appeals. Conroy testified he would focus his practice on criminal matters and other matters with which he was more familiar. Thus, under the circumstances of this case, a basic skills course is unnecessary. *Cf. Lickiss*, 786 N.W.2d at 871 (rejecting commission's recommendation that an attorney complete "appropriate continuing legal education" where attorney testified he did not intend to engage in a specific practice area in the future and had, in fact, abandoned law practice).

## IV. Disposition.

We suspend Conroy's license to practice law for six months, commencing on the filing date of this opinion. This suspension applies to all facets of the practice of law. Iowa Ct. R. 35.13(3). Upon Conroy's application for reinstatement, he must establish he has not practiced law during his suspension, has complied with the notification requirements of Iowa Court Rule 35.23, and has complied with the requirements of Iowa Court Rule 35.14. All costs are taxed to Conroy. *Id.* r. 35.27(1).

**LICENSE SUSPENDED.**