# In the Iowa Supreme Court

No. 24–0538

Submitted September 11, 2024—Filed October 4, 2024

**Iowa Supreme Court Attorney Disciplinary Board,**

Complainant,

vs.

**Joel E. Fenton,**

Respondent.

On review of the report of the Iowa Supreme Court Grievance Commission.

The grievance commission recommends ninety-day suspension for ethical violations. **License Suspended.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Tara van Brederode, Allison A. Schmidt, and Robert A. Howard III, Des Moines, for complainant.

Joel E. Fenton, Des Moines, pro se.

**Waterman, Justice.**

The Iowa Supreme Court Disciplinary Board in August 2023 charged attorney Joel E. Fenton with violating rules of professional conduct while he was under a deferral agreement entered after he served a sixty-day disciplinary suspension in 2020 for similar violations. Fenton is a sole practitioner who has struggled with depression and anxiety for many years. His recurring misconduct includes missing court hearings, neglect, and failure to communicate with clients. A panel of the Iowa Supreme Court Grievance Commission found Fenton violated multiple rules and recommended a ninety-day suspension.

On our de novo review, we agree Fenton violated our ethical rules. We suspend his law license indefinitely with no possibility for reinstatement for ninety days. As recommended by the Board, we require that Fenton provide an evaluation by a licensed healthcare practitioner verifying his fitness to practice law as a condition for his reinstatement.

## I. Background Facts and Proceedings.

We find the following facts as stipulated or otherwise established by the record. Fenton received his Iowa law license in 1996. In 2002, due to his "chronic difficulties with anxiety and depression," our court placed Fenton on a disability suspension. Ten years later, Fenton's law license was reinstated. He opened a solo practice in Des Moines and began accepting court-appointed cases through the State Public Defender's Office. Fenton works without any support staff, meaning he is responsible for administrative tasks, including ensuring deadlines and hearings are properly placed on his calendar. By his own admission, Fenton has not developed an effective calendaring system and has turned down suggestions that he hire support staff to assist him.

In 2017, Fenton received a private admonishment based on his failure to communicate with his client over several months, his failure to attend a court hearing, and his failure to ensure his client appeared at that same hearing.

**A. Fenton's Sixty-Day Consent Suspension.** Fenton admittedly failed to adequately represent eight clients from 2018 through 2020. Specifically, Fenton failed to communicate with these clients and missed multiple court hearings. He repeatedly missed filing deadlines, and his failure to resist motions for summary judgment in two cases resulted in dismissal of his clients' claims. The federal district court ordered monetary sanctions against Fenton in three cases for failing to comply with deadlines. Fenton did not timely pay the sanctions and paid belatedly only after the district court scheduled a show-cause contempt hearing.

Fenton also failed to timely file appellate documents for other clients, resulting in thirty default penalties being assessed against him. Fenton consented to a sixty-day disciplinary suspension of his license in 2020. His license was reinstated in August of that year.

**B. Deferral Agreement.** Fenton's problems persisted the following year. On June 8, 2021, Fenton agreed to represent Shanell Peavy in a federal workers' compensation case. Peavy attempted to contact Fenton multiple times that summer, and eventually they exchanged signed documents in August. Fenton did not contact Peavy again despite her persistent efforts to reach him. Fenton took no action on her case. The following February, Fenton withdrew from representing Peavy after she filed an ethics complaint against him.

In December, Fenton agreed to represent Paul Sanborn in a workers' compensation case. Fenton took no action on the case and failed to communicate with Sanborn for over four months despite Sanborn's email asking if he still

represented him. Fenton withdrew his representation in May when Sanborn filed an ethics complaint against him.

On September 13, 2022, based on the complaints of Peavy and Sanborn, the Board and Fenton entered into a one-year deferral agreement pursuant to Iowa Court Rule 35.14. Under this rule, the Board "may defer further proceedings [against an attorney] pending the attorney's compliance with conditions the board imposes for supervision of the attorney for a specified period of time not to exceed one year unless the board extends the time prior to the conclusion of the specified period." Iowa Ct. R. 35.14(1). The attorney must execute an affidavit admitting the conduct that the Board is investigating, agreeing on the conditions the Board will impose, and acknowledging that the Board may file a formal complaint against the attorney and use the attorney's admissions in the affidavit as evidence if the attorney fails to comply with the conditions. *Id.* r. 35.14(3).

> Upon the attorney's successful compliance with the conditions the disciplinary board imposed, the board must dismiss or close the investigations pending before it at the time it determined to defer further proceedings. The attorney will not be considered to have been disciplined, but the attorney's admission of misconduct may be considered in imposing sanctions in a subsequent disciplinary matter not arising out of the same conduct.

*Id.* r. 35.14(5).

As part of the deferral agreement, Fenton acknowledged that he violated Iowa Rules of Professional Conduct 32:1.3 and 32:1.4 by failing to communicate with his clients and neglecting their cases. Fenton agreed to:

- Comply with all provisions of the Iowa Rules of Professional Conduct and the Iowa Court Rules.

- Cooperate with any investigation or inquiry by the Board.

- Complete the "Attorney Self-Assessment" within the first three months of the deferral period.

- Comply with all deadlines and scheduled appearances.

- Continue to monitor mental health, implement self-care practices, and comply with any mental health treatment recommendations from his primary care provider.

- Meet with his appointed supervisor monthly and certify to the Board that he has done so.

- Certify written reports to the Board documenting his compliance with each condition.

If he failed to meet any of the conditions, Fenton acknowledged that the Board may file a formal complaint against him.

**C. Violations of Deferral Agreement.** During the term of the deferral agreement, Fenton violated its conditions in five different matters. The Board revoked the deferral agreement and filed its complaint.

1. *Nicholl-Embree representation.* On April 12, 2022, Stephen Robert Nicholl-Embree filed a pro se complaint in federal court alleging claims under 42 U.S.C. section 1983. Several months later, the court appointed Fenton to represent him. A scheduling order entered that October set the dispositive motion deadline for February 28, 2023. Fenton failed to conduct any discovery or communicate with Nicholl-Embree. On March 24, 2023, Nicholl-Embree wrote to the court asking for new counsel, stating that Fenton had never communicated with him. The defendants moved for summary judgment on March 28. Fenton obtained several extensions without preparing a resistance, conducting any discovery, or communicating with his client. Fenton moved to withdraw on April 27 and to extend deadlines. On May 31, the district court granted Fenton's motion to withdraw and faulted Fenton for not stating "why he

failed to conduct discovery on Plaintiff's behalf or that he had any physical or mental impairment that prevented him from doing so prior to the dispositive motion deadline."

2. *George representation.* On September 9, 2022, Joshua George filed a pro se complaint in federal court alleging claims under 42 U.S.C. section 1983. The court appointed Fenton to represent George. Fenton was to file an amended complaint by November 4 but failed to do so. The district court, on its own, extended the deadline to December 23. That deadline was extended another four times, either sua sponte or at Fenton's request, with the final deadline on April 7, 2023. On April 27, Fenton missed a status conference, moved for another extension (which the court denied), and moved to withdraw, which the court granted.

3. *Andre representation.* On September 19, 2022, Alan Andre filed a pro se complaint in federal court alleging claims under 42 U.S.C. section 1983. Fenton was appointed to represent Andre on September 25. The court set November 21 as the deadline for filing an amended complaint. Fenton missed that deadline, as well as another three extended deadlines. Fenton moved to withdraw and missed an April status conference, and the court declined to reschedule. The court granted his withdrawal, citing Fenton's failure "to meet deadlines and appear at a status conference" in both Andre's and George's cases.

4. *Sarceno Aguire representation.* On March 1, 2023, Fenton was appointed to represent Manuel Antonio Sarceno Aguire in a Polk County criminal case. Fenton failed to appear at the pretrial conference, which had already been continued once at his request. The court removed Fenton from the case.

5. *Haynes representation.* On March 20, 2023, Fenton entered his appearance as court-appointed counsel for Devon Haynes in a criminal case. The court granted Fenton's request to continue a plea hearing to May 9. Fenton failed

to appear at the hearing, which the court reset for May 16. He failed to appear again. The court removed Fenton from the case, noting his absence from two hearings and his failure to communicate with his client.

**D. Disciplinary Proceeding.** After revoking the deferral agreement, the Board charged Fenton with multiple rule violations in a two-count complaint. The parties submitted a partial stipulation but disagreed over mitigating and aggravating circumstances, one rule violation, and the appropriate sanction. The commission held a hearing on December 18. When asked whether any physical or mental impairment prevented him from properly representing his clients, Fenton testified,

> Well, that's difficult to say because the frustrating thing about my experience is and my situation is how well I do in cases 95, 96, 97 percent of the time. It's the cases that I don't that are the problems. And I can say in that period of time I would have been feeling pretty good. I would be getting things done.
>
> At the same time, these federal cases that I accepted on top of my regular caseload, the problems I've had traditionally is a procrastination-type problem. And when you're in the middle of everything and trying to get all this stuff done, it's very easy to rationalize things to yourself and say, "I'll get this done later. I'll get this done this weekend. I'll do this. I'll do that."
>
> And it's just something that didn't get done, and it's not because I don't feel like these clients deserved quality, adequate representation even though they're pro bono cases or they're incarcerated people or whatever. I wouldn't have taken these cases if I didn't think I was going to be able to make a difference and do the right thing.
>
> And that's the difficulty I have is understanding why I accept these matters and then with all good intentions in trying to do what needs to be done and then it just doesn't get done because I'm so busy, and I'm dealing with the mental health issues and things that I do have.
>
> I do well sometimes. I have good and bad days. Therapy has helped, medication has helped, but I still have difficulties and I'm still working on those. So the only thing I can say to this is it's

another example of where with the best of intentions I did not follow through.

The parties filed post-hearing briefs. The Board argued for a ninety-day suspension; Fenton argued for a public reprimand.

The commission issued its findings of fact, conclusions of law, and recommendations on April 1, 2024. The commission found that Fenton violated multiple rules. The commission found several mitigating factors: Fenton's history of taking pro bono cases and serving marginalized communities, his service to the bar association, his court appointments, his mental health difficulties, his mother passing away in September 2023, and his acceptance of responsibility for his actions.

The commission also found several aggravating factors: Fenton's seventeen years of practice, his admission that "it was easy" to neglect his marginalized clients because of their status, his prior discipline for similar misconduct, the multiple rule violations with multiple clients, and his violation of his deferral agreement. The commission recommended a ninety-day suspension.

## II. Standard of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Capotosto*, 927 N.W.2d 585, 587 (Iowa 2019). While we are not bound by the commission's factual findings and recommendations, we give them respectful consideration. *Id.* "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Turner*, 918 N.W.2d 130, 144 (Iowa 2018) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Morse*, 887 N.W.2d 131, 138 (Iowa 2016)). "Stipulations of fact are binding on the parties, but we are not bound by

stipulations of violations or sanctions." *Id.* "Instead, we review the stipulation and record to determine whether a violation occurred and what sanction is appropriate." *Id.* If we find the Board proved misconduct, we may choose a sanction that is greater or lesser than what the commission recommended. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 207 (Iowa 2016).

**III. Ethical Violations.**

On our de novo review, we agree with the Board and commission that Fenton violated multiple rules.

**A. Count I—Peavy and Sanborn.** The Board argues, and the commission found, that Fenton's actions violated Iowa Rules of Professional Conduct 32:1.3 and 32:1.4(a)(4) as to Peavy and Sanborn. We agree. The Board further argues that Fenton's actions violated rule 32:8.4(d) as to those clients, but the commission found that they did not. We agree with the commission.

1. *Neglect.* Iowa Rule of Professional Conduct 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." "We have previously recognized that an attorney violates this rule when he or she neglects a client's case." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weiland*, 885 N.W.2d 198, 208 (Iowa 2016). Neglect is "a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010) (quoting *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004)). An attorney violates this rule by "consistently failing to perform functions required of an attorney." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 64 (Iowa 2014).

Fenton failed to act diligently in his representation of Peavy and Sanborn. He went months without communicating with either client. He filed nothing for either client. He withdrew from representing both clients after each filed an

ethics complaint against him. We determine that Fenton violated rule 32:1.3. *See Conroy*, 845 N.W.2d at 65–66 (holding that an attorney violated rule 32:1.3 when he only spoke with a client once during the year he represented him and filed nothing on his behalf).

2. *Communication.* Rule 32:1.4(a)(4) states that a lawyer shall "promptly comply with reasonable requests for information" from a client. Iowa R. of Prof'l Conduct 32:1.4(a)(4). "Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation." *Id.* r. 32:1.4 cmt. 1. "When a client makes a reasonable request for information, [the rule] requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer . . . acknowledge receipt of the request and advise the client when a response may be expected." *Id.* r. 32:1.4 cmt. 4.

In a case with a one-year deadline to file an appeal, Fenton went over six months without responding to Peavy's repeated attempts to contact him. He went over three months without communicating with Sanborn, even after Sanborn asked if Fenton still represented him. We agree with the Board and commission that Fenton violated rule 32:1.4(a)(4). *See id.* r. 32:1.4(a)(4); *Conroy*, 845 N.W.2d at 65 (holding that the attorney violated the rule because he only communicated with his client once and did not respond to any requests for information or updates on the case).

3. *Conduct prejudicial to the administration of justice.* Rule 32:8.4(d) prohibits "conduct that is prejudicial to the administration of justice." Iowa R. of Prof'l Conduct at 32:8.4(d). The rule is violated by acts that have "hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Wright*, 758 N.W.2d 227, 230 (Iowa 2008) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Borth*, 728 N.W.2d 205, 211 (Iowa 2007)). We have concluded that an attorney violates this rule

when they miss deadlines. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 914 (Iowa 2011) (concluding that the attorney violated the rule by failing to comply with appellate deadlines, resulting in administrative dismissals of two client appeals). And, "[w]e have consistently held an attorney violates rule 32:8.4(d) when the 'misconduct results in additional court proceedings or causes court proceedings to be delayed or dismissed.' " *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 988 N.W.2d 399, 413 (Iowa 2023) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noel*, 933 N.W.2d 190, 204 (Iowa 2019)).

Fenton was dilatory in representing Peavy and Sanborn but missed no deadlines and caused no dismissals or additional court proceedings in their workers' compensation cases. The commission found that Fenton did not violate rule 32:8.4(d) as to those clients. We agree with the commission.

The Board argues that Fenton's violation of his deferral agreement itself constitutes a violation of rule 32:8.4(d) as to Peavy and Sanborn. *See Capotosto*, 927 N.W.2d at 589. We disagree with the Board as to that specific ground. Fenton's mishandling of his representation of Peavy and Sanborn led to the deferral agreement, but he had withdrawn from representing each of them before entering the agreement. Fenton's breach of the deferral agreement involved other clients, which we address below.

**B. Count II—Misconduct During the Deferral Agreement.** The Board argues, and the commission found, that Fenton's actions while the deferral agreement was in place violate rules 32:1.3, 32:1.4(a)(2), 32:1.4(a)(3), 32:3.2, and 32:8.4(d). We agree.

1. *Neglect.* As noted, rule 32:1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. of Prof'l Conduct 32:1.3. "A lawyer's work load must be controlled so that each matter can be handled competently." *Id.* r. 32:1.3 cmt. 2. "When an attorney fails to

appear at scheduled court proceedings, does not make the proper filings, or is slow to act on matters, he or she violates rule 32:1.3." *Turner*, 918 N.W.2d at 145 (quoting *Weiland*, 885 N.W.2d at 208). In *Iowa Supreme Court Attorney Disciplinary Board v. Turner*, we held that the attorney violated rule 32:1.3 when he repeatedly failed to attend hearings, failed to tell his clients about the hearings, and missed deadlines on motions and briefs. *Id.*

Fenton missed two plea hearings in his Haynes representation and a pretrial conference in his Sarceno Aguire representation. These failures violate rule 32:1.3. *See Weiland*, 885 N.W.2d at 208 (concluding that "an attorney violate[s] rule 32:1.3 when he fail[s] to appear for a client's pretrial conference").

During the six-month period he represented George, Fenton failed to file an amended complaint on behalf of his client—even though the district court extended the deadline five times—and failed to attend a status conference. During the seven-month period he represented Andre, Fenton again failed to file an amended complaint on behalf of his client—even though the district court extended the deadline four times—and failed to attend Andre's status conference. This conduct also violates rule 32:1.3. *See id.*

Fenton also failed to perform any discovery on behalf of Nicholl-Embree during the eight-month period he represented him. This, too, violates rule 32:1.3. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. West*, 901 N.W.2d 519, 524 (Iowa 2017) (concluding that an attorney violates this rule when they do "little or nothing to advance the interests of a client after agreeing to represent the client" (quoting *Moorman*, 683 N.W.2d at 552)).

2. *Communication.* Rule 32:1.4(a)(2) states, "A lawyer shall . . . reasonably consult with the client about the means by which the client's objectives are to be accomplished." Iowa R. of Prof'l Conduct 32:1.4(a)(2). And rule 32:1.4(a)(3) requires the lawyer to "keep the client reasonably informed about the status of

the matter." *Id.* r. 32:1.4(a)(3). The lawyer must inform the client about any "significant developments affecting the timing or the substance of the representation." *Id.* r. 32:1.4 cmt. 3.

Fenton failed to communicate with Nicholl-Embree from August 15 until his withdrawal on May 31, even though Nicholl-Embree repeatedly attempted to contact him. Thus, Fenton did not do what rule 32:1.4(a)(2) requires: consult with the client. Fenton also violated rule 32:1.4(a)(3) by failing to inform Nicholl-Embree about the defendants' motion for summary judgment. *See Conroy*, 845 N.W.2d at 65 (concluding that the attorney violated rule 32:1.4 by failing to communicate with six clients about the status of their appeals and only spoke to another client once in a year).

3. *Expedite litigation.* Rule 32:3.2 states, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. of Prof'l Conduct 32:3.2. "An attorney violates this rule when he or she fails to timely 'file documents, pursue appeals, and meet deadlines.'" *Weiland*, 885 N.W.2d at 211 (quoting *Conroy*, 845 N.W.2d at 65). An attorney also violates this rule when he or she fails "to appear at hearings and participate in discovery." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 548 (Iowa 2012).

Fenton did not conduct any discovery in the Nicholl-Embree matter. *See id.* Fenton did not appear at hearings or conferences in the George, Andre, Sarceno Aguire, and Haynes matters. *See id.* Fenton missed deadlines to file amended complaints in the Andre and George matters. *See Weiland*, 885 N.W.2d at 211. Fenton violated rule 32:3.2 many times over.

4. *Conduct prejudicial to the administration of justice.* As noted, rule 32:8.4(d) states, "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice . . . ." Iowa R. of Prof'l

Conduct 32:8.4(d). An attorney violates this rule by actions or inactions that "hamper[] the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." *Wright*, 758 N.W.2d at 230 (quoting *Borth*, 728 N.W.2d at 211).

Fenton missed numerous deadlines in the George and Andre matters. *See Dolezal*, 796 N.W.2d at 914 (Iowa 2011) (concluding that the attorney violated the rule by failing to comply with appellate deadlines, resulting in administrative dismissals of two client appeals). Fenton procrastinated in filing amended complaints on behalf of Andre and George, requiring the district court to continually grant extensions, which ultimately resulted in Fenton's withdrawal. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 103 (Iowa 2012) (concluding that the attorney violated rule 32:8.4(d) because the attorney's multi-year procrastination caused the district court to expend valuable judicial resources to issue orders, extend deadlines, and clean up the ongoing probate proceedings). Fenton did not conduct any discovery on behalf of Nicholl-Embree and never filed a resistance to the defendant's motion for summary judgment, requesting only extensions. *See Johnson*, 988 N.W.2d at 413–14; *see also Iowa Sup. Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011) (concluding that the attorney's failure to do any work in a client matter "hampered the efficient operation of the courts" and "was not the type of conduct within the well-understood norms and conventions of the practice of law"). When Fenton failed to show up at the pretrial conference for Sarceno Aguire, the district court had to remove Fenton from representing him. *See Johnson*, 988 N.W.2d at 413–14. Fenton's repeated misconduct in these cases caused delays and additional court proceedings, thereby violating rule 32:8.4(d). *See id.* at 413 (misconduct causing delays and additional court proceedings violates rule 32:8.4(d)).

We agree with the Board that Fenton's violations of the deferral agreement also violate rule 32:8.4(d) because "[t]he formation of the [Deferral] Agreement, as well as the Board and commission's intervention, also constitute the use of judicial resources." *See Capotosto*, 927 N.W.2d at 589.

**IV. Sanction.**

When determining an appropriate sanction, we give the commission's recommendation respectful consideration but are not bound by it. *Turner*, 918 N.W.2d at 144. We weigh several factors to determine an appropriate sanction. *Id.* at 152. The factors include:

> [T]he nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Id.* (quoting *Morse*, 887 N.W.2d at 143). "We strive for consistency with our precedents." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Daniels*, 984 N.W.2d 757, 765 (Iowa 2023).

The Board and commission recommended a ninety-day suspension. Fenton recommended a public reprimand but acknowledged in his brief before the commission that his misconduct "will almost certainly result in a suspension." Based on the following factors and our court's precedents, we conclude that a ninety-day suspension is warranted.

**A. Aggravating Factors.** Fenton has practiced for seventeen years. This is an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 181 (Iowa 2019) (concluding that the attorney's seventeen years of practice is an aggravating factor). Of course, a lawyer at "*any* level of experience would understand that" missing court hearings is "deplorable" regardless of whoever the client is. *Turner*, 918 N.W.2d at 155 (concluding that the attorney's

inexperience was not a mitigating factor because any lawyer should know not to miss court hearings).

Fenton has been disciplined previously for essentially the same misconduct. "Prior discipline is 'an aggravating factor because an attorney did not learn from his or her prior misconduct.' " *Daniels*, 984 N.W.2d at 766 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Marzen*, 949 N.W.2d 229, 244 (Iowa 2020)). This factor is even stronger when the prior discipline was based on the same or similar conduct. *Id.* Fenton received a private admonition in 2017 for failing to communicate with clients and missing a hearing. Fenton consented to a sixty-day suspension in 2020 and entered into a deferral agreement in 2022 for failing to communicate with clients and missing hearings and court deadlines. Fenton then violated the deferral agreement by continuing to fail to communicate with clients and miss hearings and court deadlines. "These current violations demonstrate that [Fenton] has not learned from his previous disciplinary history." *Weiland*, 885 N.W.2d at 215. Instead, "it seems, neglect has become an unfortunate but recurrent theme." *Conroy*, 845 N.W.2d at 67.

Fenton's multiple rule violations are an aggravating factor. *Turner*, 918 N.W.2d at 154 ("[M]ultiple violations of disciplinary rules generally support enhanced sanctions." (alteration in original) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 339 (Iowa 2015))). Fenton's "clear pattern of misconduct across several clients" is also an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Fisher*, 965 N.W.2d 470, 474 (Iowa 2021).

Lastly, Fenton violated his deferral agreement with the Board. In *Iowa Supreme Court Attorney Disciplinary Board v. Capotosto*, we held that the attorney's failure to comply with the deferral agreement was an aggravating factor. 927 N.W.2d at 590. The attorney's "inaction, at the very least, demonstrate[d] a disregard for the Board's authority." *Id.* More importantly,

Fenton's misconduct escalated—rather than diminished—after entering into the deferral agreement. This is a significant aggravating factor.

**B. Mitigating Factors.** Fenton reported that he has been under psychiatric care. He states that he voluntarily ceased practicing law in mid-January 2024 and had withdrawn from over 150 cases, with the intention of withdrawing from all his cases by early February. He states that he does not intend to return to practicing law in 2024 or seek reinstatement without substantial progress in his ability to practice. At the commission hearing, Fenton testified that he was one of the few attorneys in the Southern District of Iowa willing to take prisoner rights cases. He also stated that he has been cooperative with the Board throughout this process. Fenton claimed that the actual harm from his misconduct caused to his clients was minimal.

Fenton's representation of clients in underserved and marginalized communities is a mitigating factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Heggen*, 981 N.W.2d 701, 713 (Iowa 2022) (concluding that the attorney providing legal services to an "underserved and vulnerable population" was a mitigating factor). Fenton's pro bono and reduced-fee casework is also a mitigating factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Leitner*, 998 N.W.2d 627, 647 (Iowa 2023) (concluding that the attorney's history of pro bono and reduced-fee work was a mitigating factor).

The parties stipulated that Fenton's depression contributed to the violations. "Personal illnesses, such as depression, do not excuse a lawyer's misconduct but can be mitigating factors and influence our approach to discipline." *West*, 901 N.W.2d at 527 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 332 (Iowa 2009)). The illness must be related to the misconduct for it to be considered mitigating. *Fisher*, 965 N.W.2d at 474. "We also consider [the attorney's] attempts to address his depression through

therapy and medication." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Frerichs*, 718 N.W.2d 763, 768 (Iowa 2006); *see also Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 661 (Iowa 2013) ("To be considered in mitigation, the alcoholism must have contributed to the ethical misconduct, and the lawyer must undertake rehabilitative efforts to control his addiction."). We find that Fenton's depression contributed to his misconduct, and his seeking treatment is a mitigating factor.

Fenton's cooperation with the Board is a mitigating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Sobel*, 997 N.W.2d 421, 434 (Iowa 2023). But we expect and require cooperation with the Board, so cooperation "is not a significant mitigating circumstance." *Id.* (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 207 (Iowa 2007)).

Accepting responsibility and acknowledging wrongdoing is a mitigating factor, and Fenton has done so here. *See Turner*, 918 N.W.2d at 156. He stipulated to the facts, and he expressed remorse in the commission hearing.

Fenton's stress from his mother passing away is a mitigating factor but only "to the extent it adversely influenced his behavior or actions during the disciplinary case." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Mbanza*, 996 N.W.2d 711, 721 (Iowa 2023). His mother died after the Board had filed its complaint against him. His bereavement mitigates his tardiness during these disciplinary proceedings but does not excuse his underlying ethical violations.

Fenton's voluntary cessation from the practice of law is a consideration "when evaluating whether our sanction will serve its purposes of deterring future misconduct and protecting the public." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kingery*, 871 N.W.2d 109, 124–25 (Iowa 2015). But the period that Fenton ceased practicing law is not credited against any suspension imposed. *Id.*

Fenton argues there was no significant client harm. Certainly, the clients suffered delays in their cases. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 467 (Iowa 2014) (holding that lack of client harm is a mitigating factor, "although the need to find successor counsel was certainly an inconvenience").

We agree with the Board that Fenton's status as a solo practitioner, and the resulting financial hardship of a suspension, is not a significant mitigating factor. *See Conroy*, 845 N.W.2d at 67 (declining "to give any significant weight" as a mitigating factor to attorney's financial difficulties); *see also, In re Neitlich*, 597 N.E.2d 425, 429–30 (Mass. 1992) ("[T]hat a term of suspension will disrupt the respondent's solo practice cannot influence our decision, as '[w]e cannot sensibly have or apply a rule which excuses solo practitioners from warranted discipline' " while the discipline is imposed on "others who happen to be engaged in group practice." (quoting *In re Driscoll*, 575 N.E.2d 46, 51 (Mass. 1991) (Greaney, J. dissenting))).

**C. Appropriate Sanction.** "When neglect of client matters is the principal violation in an attorney disciplinary case, the resulting discipline normally ranges from a public reprimand to a six-month suspension." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 213 (Iowa 2014) (quoting *Moorman*, 683 N.W.2d at 553). On the low end, if there is only one instance of neglect, a public reprimand may be appropriate. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Silich*, 872 N.W.2d 181, 193 (Iowa 2015). But if there is a "recurring pattern of misconduct or multiple ethical violations," a suspension is appropriate. *Id.*

"Attorneys who engage in conduct prejudicial to the administration of justice have received suspensions ranging from sixty days to eighteen months when . . . the conduct is 'compounded by additional violations.' " *Leitner*,

998 N.W.2d at 647 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Aeilts*, 974 N.W.2d 119, 129 (Iowa 2022)).

Fenton argues for a public reprimand. That sanction would be inadequate. *See Dolezal*, 796 N.W.2d at 922 (holding that a public reprimand would not be appropriate because such a sanction is appropriate in cases involving "only a single instance of misconduct"). Fenton's pattern of repeated misconduct warrants a suspension.

Next, we must determine the appropriate length of the suspension. In *Capotosto*, we suspended the attorney's license for sixty days after finding the attorney neglected to rectify twelve delinquent cases, received prior discipline in the form of a public reprimand and a temporary suspension, and failed to comply with his deferral agreement. 927 N.W.2d at 589–90. We also found several mitigating factors, such as letters written on his behalf from a judge and a county attorney, his willingness to accept court-appointed work, and the fact that he had completed substantial work in the delinquent cases. *Id.* at 590–91.

In *Iowa Supreme Court Attorney Disciplinary Board v. Cohrt*, we imposed a ninety-day suspension on an attorney who neglected two client matters by failing to respond to discovery. 784 N.W.2d 777, 783 (Iowa 2010). The attorney also made a misrepresentation to his clients, had a history of neglect resulting in a private admonition, and did not acknowledge his neglect but insisted he acted ethically. *Id.*

We suspended an attorney's license for ninety days in *Iowa Supreme Court Attorney Disciplinary Board v. Humphrey*, even though the attorney only neglected a single client matter, and the violations did not involve any fraud or dishonesty. 812 N.W.2d 659, 669 (Iowa 2012). We found that a significant aggravating factor was the attorney's three previous violations resulting in a public reprimand, a sixty-day suspension, and an indefinite suspension with no

possible reinstatement for three years. "[T]he earlier pattern of neglect and nonresponsiveness has reemerged," so "a substantial suspension is appropriate to protect the public and uphold the integrity of the profession." *Id.* A similar pattern of neglect, unresponsiveness, and escalating discipline is present here.

In *Iowa Supreme Court Attorney Disciplinary Board v. Hedgecoth*, we suspended an attorney's license for ninety days based on a similar record of recurring neglect. 862 N.W.2d 354, 366 (Iowa 2015). There, the attorney missed deadlines in a postconviction-relief action and in a criminal appeal, and significantly delayed discovery in a civil case for a third client. *Id.* at 357–59. We found that the attorney's prior discipline was an aggravating factor, especially "[g]iven that some of these prior instances of discipline were imposed for conduct almost identical to the conduct at issue in this proceeding." *Id.* at 364.

On balance, we believe a ninety-day suspension is appropriate. Fenton neglected seven client matters. He has a history of neglect and lack of client communication—highlighted by his deferral agreement, his prior sixty-day suspension, and his prior admonition for similar misconduct.

Given Fenton's lengthy mental health history, we agree with the Board's recommendation that Fenton provide an evaluation by a licensed mental health professional verifying his fitness to practice law as a condition for reinstatement. *See Turner*, 918 N.W.2d at 158 (ordering respondent with mental health condition to provide an evaluation verifying fitness to practice law prior to reinstatement); *see also Netti*, 797 N.W.2d at 607 (same); *Marks*, 759 N.W.2d at 333 (same).

**V. Disposition.**

We suspend Fenton's license to practice law with no possibility of reinstatement for a minimum period of ninety days, effective ten days from the date of this opinion. This suspension applies to all facets of the practice of law.

*See* Iowa Ct. R. 34.23(4). Fenton must comply with the notification and other requirements of Iowa Court Rule 34.23(2). As a condition for his reinstatement, Fenton must provide an evaluation from a licensed mental health professional verifying his fitness to practice law.[1] Costs of this action are taxed to Fenton under Iowa Court Rule 36.24(1).

**License Suspended.**

---

[1]This disciplinary suspension is separate from our recent orders suspending Fenton for his noncompliance with client security commission rules, *see* Iowa Ct. Rs. 39.5–39.11, and continuing legal education requirements, *see id.* r. 41.4. He must also fulfill his obligations under those rules as a condition of his reinstatement.